The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes, the records contained in the Commissions file in this matter and the briefs before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence, the Full Commission reverses the Deputy Commissioners denial of benefits and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following which was entered into by the parties as:
 STIPULATIONS
1. An employer-employee relationship existed between plaintiff and defendant employer at the time of the alleged incident.
2. The carrier on the risk was Wausau Insurance Company.
3. The parties are subject to the North Carolina Workers Compensation Act.
4. The date of the alleged injury is April 24, 1996.
5. The plaintiffs average weekly wage was $506.45, yielding a compensation rate of $337.65 per week.
 ***********
The parties also stipulated to the following sentence: "The defendant-carrier filed a Form 60 with the North Carolina Industrial Commission on 17 March 1998 and paid temporary benefits including a lump sum payment, which represented back weekly pay and the payment of some medical bills.
The Full Commission declines to accept the foregoing stipulation and instead finds the following as facts: The defendant-carrier filed a Form 60 with the North Carolina Industrial Commission, dated March 17, 1998 but not filed with the Industrial Commission until October 29, 1998, and paid temporary benefits including a lump sum payment (by way of a check dated March 30, 1998), which represented back weekly pay and the payment of some medical bills. The check was made out for $34,102.50.
 ***********
Based upon all of the competent, credible evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff, age 31, was working for the defendant-employer Joe Tannery, doing business as Joes Heating Cooling Service, on April 24, 1996 as a heating and air conditioning technician. His job duties included the installation and servicing of heating and air conditioning units and ducts. Occasionally, the plaintiff unloaded and handled materials delivered to the defendant-employers place of business.
2. Plaintiff sustained an injury by accident on April 24, 1996 while lifting a roll of insulation over his head. Plaintiff used a handcart to carry the installation to where it was stored. Once he carried it to where it had to be stored, he had to physically pick up the insulation and place it on the top of the storage shelves to avoid destruction in the event of a flood. In order to lift the insulation and place it up on the top shelf, plaintiff had to get into a very awkward position. He placed the insulation on this shoulder, then tried to put it on top of the shelf by using both hands and extending himself on his toes. When he did this, he felt his shoulder pop, his back hurt and he felt numbness in his right leg. He was working alone when this occurred.
3. After feeling the pain, plaintiff took a brief break. When Joe Tannery returned to the shop in about an hour, plaintiff explained to him that he was injured and that he had to go to the doctor. Joe replied by telling plaintiff to take the rest of the day off and to take it easy. The next day plaintiff came to work in a lot of pain. Joe suggested that plaintiff go to The Bone Joint Clinic because Joes wife had been there for treatment. It took approximately a week to get the first appointment. Plaintiff was complaining constantly to Joe about back pain during this week.
4. On May 16, 1996, the plaintiff was treated by Dr. Bass, his family physician, who diagnosed the plaintiff with acute right shoulder syndrome. Dr. Bass injected the plaintiffs shoulder and prescribed Percocet for pain. On May 29, 1996, Dr. Bass ordered a refill of the plaintiffs Percocet prescription. The records for these two dates do not mention any complaints of back pain. All of Dr. Basss records are extremely skimpy.
5. Plaintiff went to The Bone Joint Clinic where he saw Dr. Paul L. Burroughs. This appointment was placed on health insurance since no Form 18 had yet been filed and since neither employer nor carrier had accepted liability. At the appointment, plaintiff told Dr. Burroughs that he had pain in his lower back and shoulder. Dr. Burroughs note indicates that the plaintiff worked in heating and air conditioning and noted a sudden pain in his right shoulder about five weeks prior when he threw a heavy load up onto his shoulder. Dr. Burroughs also noted that plaintiff had had pain since without improvement on analgesics or activity modification. Dr. Burroughs diagnosed tendonitis and contusion of the right shoulder, by history, and found that plaintiff had early stiffness and adhesive capsulitis, post traumatic. Dr. Burroughs record of the May 31, 1996 office visit did not reflect back pain.
6. Plaintiff went back to work and continued to try to work in pain throughout the summer. The pain was persistent and he complained to Joe constantly. In fact, presumably as a result of this complaining, their relationship began to deteriorate. Joe let plaintiff know that the last person who filed a workers compensation claim was no longer working with him. Afterwards, when plaintiff asked to go back to the doctor, Joe would not allow it.
7. As time went on, plaintiff could no longer meet the physical requirements of his job at Joes. He had no choice but to seek a new job with less physical requirements. He took about a month off to build up his strength and began the job application process. He found employment with Carrolls Service Company of Garner. The job at Carrolls was basically light duty, involving only "service work on the heating and air conditioning equipment. Although it was substantially less physical than installation, it continued to cause him physical problems, particularly in the winter of 1996. Additionally, as time went by, the job developed into more physical work due to the need for "change outs. This involved changing the heating and air conditioning system from an old system to a new one, the same type of work that plaintiff did at Joes. Although he was in pain, plaintiff tried to deal with the work the best that he could.
8. Plaintiff filed a Form 18 with the Industrial Commission on September 3, 1997 and defendant carrier admitted compensability by way of a Form 60 dated March 17, 1998 and filed with the Industrial Commission on October 29, 1998. In describing the compensable injury by accident the Form 60 said "lifting a roll of insulation, HNP, back. The letters HNP mean, "herniated nucleus pulposus, which is a medical term for a ruptured disc. The Form 60 also says that the disability resulting from the injury began on April 25, 1996, the day of the injury by accident. Although the Form 60 says that the description of the injury by accident and other details provided are "provided for informational purposes only and do(es) NOT constitute an agreement, this does not prevent the information thereby disclosed from being held by Industrial Commission as an admission.
9. After filing a Form 18, plaintiff continued follow-up treatment with Dr. Rich and the defendants initiated investigation of the plaintiffs Workers Compensation claim. After a thorough investigation, including a recorded statement of the plaintiff taken on January 12, 1998 in which he related his back problems to his original work injury on April 24, 1996 and review of the plaintiffs medical records, the defendants filed a Form 60 with the Industrial Commission. After filing the Form 60, the defendants began paying benefits. In making the decision to file a Form 60, the defendants relied on the medical records concerning the plaintiffs medical treatment with Dr. Rich which indicated that plaintiffs back injury was related to his original injury on April 24, 1996 and was thus compensable. On May 18, 1999, plaintiff returned to see Dr. Rich with complaints of continuing mechanical back pain to such an extent the plaintiff did not feel he could perform the requirements of his newly acquired job operating a textile machine for a textile research corporation.
10. Plaintiff was treated by Dr. Fajgenbaum of The Bone and Joint Surgery Clinic on March 25, 1997 for complaints of right shoulder and right knee pain. Plaintiff reported that he did not recall any specific injury to his knee, and said that most of his symptoms were in the posterior aspect of the right thigh radiating down into his right leg. He reported that his toes were numb and tingly, but denied any back pain. Dr. Fajgenbaum prescribed an anti-inflammatory medication for the plaintiffs shoulder pain and referred the plaintiff to Dr. McLain because of neurological symptoms in his foot.
11. Dr. L. William McLain examined the plaintiff on April 15, 1997, at which time the plaintiff complained of pain in the low back region and right lower extremity. Plaintiff began having these symptoms about a year prior to April 15, 1997. Plaintiff reported that he was in an accident a year prior in which he injured his right shoulder, resulting in pain in the low back region and right lower extremity. Dr. McLain determined that plaintiffs symptoms suggested a right lumbar radiculopathy. He ordered an MRI, which revealed a moderate-sized central and right-sided herniated disk at L5-S1 and a small central herniated disk at L4-5.
12. Dr. McLain referred the plaintiff to Dr. Kenneth Rich, a neurosurgeon. Prior to his examination by Dr. Rich on April 29, 1997, the plaintiff completed a patient intake form. The form contained questions about whether an injury had occurred and how. Plaintiff did not complete that portion of the form, although he did complete other portions of the form.
13. By the time the plaintiff first saw Dr. Rich, the plaintiff had quit his job with Carrolls Service Company. He had no health insurance when he saw Dr. Rich. Dr. Rich counseled the plaintiff to apply for the States Vocational Rehabilitation services because the plaintiff could not pay his medical bills and Dr. Rich did not believe the plaintiff could ever return to heating and air conditioning work. Plaintiff applied for and received assistance from Vocational Rehabilitation. Plaintiff and his mother returned to Dr. Rich on July 24, 1997 at which time Dr. Rich discussed the possibility of surgery. Again, Dr. Rich discussed with the plaintiff various ways for the plaintiff to get assistance with his medical bills. During this discussion, Dr. Rich told the plaintiff that avenues that might assist him included Workers Compensation, Vocational Rehabilitation or Medicaid.
14. Dr. Rich performed surgery on the plaintiffs lumbar disk on August 7, 1997. His office note of January 22, 1998 states, "I understand Wausau has accepted liability in this case.
15. Plaintiff was released from treatment with Dr. Rich on January 22, 1998 with a ten percent permanent partial disability to his back.
16. Plaintiff began working with Hamby Textile Research in Garner in February 1998 as a machine operator. The job involved very little physical work and no lifting.
17. In May of 1999, the plaintiff returned to Dr. Rich complaining of back pain. It was Dr. Richs opinion that the plaintiff had mechanical back pain and he therefore referred him to Dr. William Lestini, another orthopedic surgeon, for consideration of a possible fusion. Dr. Rich specializes in discs while Dr. Lestini handles disc fusions.
18. The defendant-carrier denied payment for further back treatment, including examination by Dr. Lestini, after it had reviewed a copy of Dr. Richs May 27, 1999 office note in which he said,"
As I explained to him, the fact that Workers Compensation let him come to see me when his original back problem was a non-work-related problem does not imply that the comp carrier will approve all treatments or all visits.
In his office note of September 2, 1999, Dr. Rich explains that the above quoted statement from his May 27, 1999 office note was in error. He said, in pertinent part,"
Im afraid Im part of creating some confusion here. * * * "Later on it turns out that this was determined to be a work-related injury and compensable and, indeed, I was aware of that in January 1998 according to my note then. When I saw him back in July some six months later that had slipped my mind. Randall was then talking about increasing his workload and having a concomitant increase in back pain. At that time he filled out forms indicating this was a work-related injury. I assumed he was indicating that his increasing back pain with increasing workload was a work-related injury rather than the whole course of treatment being a work-related injury. That is what I was indicating in my July 1998 note.
19. Plaintiff went to see Dr. Lestini on August 5, 1999 at his own expense. Dr. Lestinis history indicates that plaintiff was a 30-year-old man referred by Dr. Ken Rich for evaluation of persistent pain in his back and hip. Plaintiff gave a history of an injury occurring in April of 1996. He was lifting insulation at that time and had complaints of right shoulder pain, low back and right leg pain. He was ultimately diagnosed with herniated degenerative disc and taken to surgery by Dr. Rich in August 1977, for complaints of low back pain and right leg pain. Following the surgery, he was approximately 50 percent improved and recuperated fairly well. He was released to work in January 1998, with some restrictions. After returning to work at approximately six months, he began having gradually increasing pain and since that time over the past six months his symptoms have worsened significantly. He now describes a constant lumbosacral pain with some radiation into the upper low back and into the buttocks and occasionally into the right groin area. Dr. Lestini would not proceed with treatment of the plaintiff until the issue of insurance coverage was clarified. Dr. Lestini told plaintiff, corroborated by plaintiffs wife, that it appeared to him that the injuries resulted from the accident of April 24, 1996, which plaintiff described. This was also corroborated by Dr. Lestinis note that this seems to be a work-related claim.
20. Plaintiff was terminated by Hamby Textile Research in August 1999. From late September 1999 to October 1999, the plaintiff worked as a FEMA housing inspector. The work dwindled and he was not making enough money, so he began working at Lowes as a plumbing specialist in November 1999.
21. At the time of the hearing before the Deputy Commissioner, the plaintiff was still working at Lowes, but was in constant pain. Plaintiff wanted to have surgery as soon as possible. Plaintiff is still in need of medical care with respect to his compensable injuries and will likely be in need of such care for an extended period of time in the future.
22. Dr. Rich testified, and the Full Commission finds as fact, that an incident such as lifting a heavy object can cause a ruptured disc and there was no medical reason that would lead him to believe that plaintiff did not herniate his disc by lifting a roll of insulation. He also testified, and the Full Commission finds as fact, that he did not have any reason to disagree with the history written on the Form 60 that plaintiff was lifting a roll of insulation when he hurt his back, although when pressed he said he had no reason to either agree or disagree.
23. Along with their Form 33R "RESPONSE TO REQUEST THAT CLAIM BE ASSIGNED FOR HEARING, defendants filed a Motion for Relief in which they requested an Order specifically stating that they were not bound by the Form 60 with respect to the plaintiffs back condition. The Commissions Executive Secretary filed an order on November 16, 1999 finding that she did not have standing grounds or authority to issue the requested Order and stating that defendants may join their motion with the issues in dispute to be decided at the hearing. The Full Commission denies this Motion for the reasons stated in this Opinion and Award. In his deposition Dr. Rich testified that the statement in his office note of May 27, 1999 was in error. Defendants motion thus was founded upon a statement admitted by the person making it to be in error. Additionally, defendants are bound to their Form 60 by the doctrine of equitable estoppel. Had they not accepted the claim and related it to a ruptured disc, plaintiff would have been in a better position to prepare expert testimony. As Dr. Kenneth Rich testified, "I dont recall him describing an injury, but we are dealing with three years ago. Later on in his deposition he testified as follows, "And I certainly cant say that three years ago Id remember never asking him, Did you do this on the job?
 ***********
Based upon the foregoing findings of fact, the Full Commission reaches the following:
CONCLUSIONS OF LAW
1. On April 24, 1996, the plaintiff sustained a compensable injury by accident involving his shoulder and back. N.C. Gen. Stat. 97-2(6). Plaintiff established a causal relationship between the accident of April 24, 1996 and his back problems both by his testimony and the testimony of his wife as well as the deposition and office notes of Dr. Kenneth Rich and the office notes of Dr. William Lestini. Additionally, defendants admitted a compensable injury on April 24, 1996 resulting in a ruptured disc in filing their Form 60 with the Industrial Commission and in accepting liability for lost wages and medical expenses.
2. A Form 60 when filed with the Industrial Commission becomes an award of the Industrial Commission. Calhoun vs. Wayne Dennis Heating and Air Conditioning, 129 N.C. App. 794, 501 S.E.2d 346 (1998).
3. Employers and their workers compensation carriers are required to pay future medical compensation when the treatment lessens the period of disability, effects a cure or gives relief. N.C. Gen. Stat. 97-25, 97-25.1; Little v. Penn Ventilator Co., 317 N.C. 206, 210, 345 S.E.2d 204, 207
(1986). "Logically implicit in this statute is the requirement that the future medical treatment be "directly related to the original compensable injury. Pittman v. Thomas Howard, 122 N.C. App. 124, 130, 468 S.E.2d 283,286, disc. review denied, 343 N.C. 513, 472 S.E.2d 18 (1996). The burden of proof is on the defendants to prove that the requested treatment is not related to the original compensable injury. Parsons vs. The Pantry, Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997), Reinninger v. Prestige Fabricators, ___ N.C. App. ___, 523 S.E.2d 720 (1999). In this they have failed. The plaintiff, on the other hand, proved that the requested treatment is directly related to the original compensable injury although he did not have that burden of proof.
4. Defendants are responsible for the medical treatment of plaintiff by Drs. Rich, Burroughs, Fajgenbaum, Bass, Lestini and all others who provided treatment with respect to plaintiffs compensable injuries to the extent provided by N.C. Gen. Stat. 97-25 and the case law. Such treatment shall be at the rates provided in the Medical Fee Schedule of the N.C. Industrial Commission and shall be paid to those providing the treatment subject to outstanding liens such as the lien of the State Vocational Rehabilitation Department.
5. Defendants are responsible for future medical expenses growing out of the compensable injuries, including, if still recommended by Dr. Lestini, surgery.
6. Plaintiff has not yet reached maximum medical improvement and may be entitled to further disability compensation. Plaintiff has not made an election between permanent partial disability benefits and continuing benefits. To the extent he has not been able to earn wages during any period of time by reason of his compensable injuries he is entitled to compensation at the rate of $337.65 per week for each week or partial week when he was wholly unable to earn wages and made be entitled to reduced compensation for periods when he was able to earn less than $506.45 per week by reason of his compensable injuries.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall provide for all reasonable and necessary medical expenses that were causally related to plaintiffs compensable April 24, 1996 injury by accident and which tend to effect a cure, provide relief or lessen the period of disability including treatment provided by Drs. Rich, Burroughs, Fajgenbaum, Bass, and Lestini. Such treatment shall be reimbursed at the rates provided in the Medical Fee Schedule of the N.C. Industrial Commission and shall be paid to those providing the treatment subject to outstanding liens such as the lien of the State Vocational Rehabilitation Department.
2. Should plaintiff be desirous of such and should Dr. Lestini or some other physician continue to recommend surgery for plaintiffs compensable injuries, defendants shall pay for such surgery. Defendants shall pay for all future medical treatments related to the compensable injuries.
3. Plaintiff has not yet reached maximum medical improvement and may be entitled to further disability compensation. Plaintiff has not made an election between permanent partial disability benefits and continuing benefits. The Full Commission retains jurisdiction of this matter.
4. Defendants shall pay the costs.
This 14th day of May, 2001.
 S/______________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/__________________ CHRISTOPHER SCOTT COMMISSIONER
S/__________________ LAURA K. MAVRETIC COMMISSIONER