***********
Having reviewed the positions of the parties and the evidence of record, the Full Commission hereby modifies and affirms the Opinion and Award of the deputy commissioner. The decision is modified to delete the sanctions imposed upon defendant.
Based on the I.C. Form 21, Agreement for Compensation, which was approved by the Commission on February 10, 2000, and the Pre-Trial Agreement of the parties which was filed on May 11, 2000, the Full Commission hereby accepts the following as
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured, with Alexsis, Inc. as the servicing agent.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff contracted compensable occupational diseases, right carpal tunnel syndrome and ulnar nerve neuritis, on or about March 6, 1996, which were the subject of the prior hearing in this case. As a result of the Opinions and Award previously filed in this case, plaintiff received temporary total disability benefits from March 7, 1996 through March 30, 1999. The parties entered into a Form 21 Agreement pursuant to which plaintiff received permanent partial compensation for 43.2 weeks as a result of the eighteen percent impairment rating to her right arm.
5. Plaintiff's average weekly wage was $171.50, which yields a compensation rate of $114.34 per week.
6. Plaintiff returned to work for Target on July 7, 1999, earning the same or greater wages as at the time of the occupational disease.
7. The issues for determination are:
 a. Whether defendants should be sanctioned for failing to honor the November 1999 Form 18M?
 b. Whether plaintiff is entitled to psychological treatment, a TENS unit, and other treatment?
 c. Whether plaintiff should be compelled to cooperate with medical treatment?
8. Judicial Notice is taken of the October 14, 1997 Deputy Commissioner's Opinion and Award and the August 28, 1998 Full Commission Opinion and Award.
9. The parties stipulated the following documentary evidence into the record:
 a. I.C. Forms 18, 18M, 19, 21, 22, 61, 28T, 33 and 33R;
 b. Defendant's Motion to Compel Cooperation with Medical Treatment,
c. Medical Records,
d. Case Management Reports, and
 e. Documents Regarding Form 18M and Future Medical Treatment.
 ***********
Based upon all of the competent evidence adduced from the record and the reasonable inferences therefrom, the Full Commission makes the following additional
 FINDINGS OF FACT
1. On or about January 15, 1997, Dr. E. Brown Crosby performed carpal tunnel release and an ulnar nerve transposition on plaintiff's right arm. Following the surgery, Dr. Brown referred plaintiff for pain management. He released plaintiff from his care on October 28, 1998, and urged plaintiff to avoid chronic consumption of narcotic pain medication.
2. In September of 1997, plaintiff began treatment at Unifour Pain Treatment Center with Dr. Paul Lafavore, where she has received narcotic pain medication for her condition.
3. Plaintiff was released to return to work with restrictions of no repetitive use of the right hand and no lifting over fifteen pounds with the left hand. From March 31, 1999, to June of 1999, plaintiff began working at Sears as a stock clerk on light duty. She earned the same or greater wages than those earned with defendant-employer.
4. On July 7, 1999, plaintiff obtained light duty work at Target as a stock clerk. She earns the same or greater wages than those earned at the defendant-employer.
5. On or about November 5, 1999, Dr. Lafavore, the plaintiff's authorized treating physician completed an I.C. Form 18M, on which he recommended that plaintiff would benefit from a TENS unit, additional treatment and medication for her chronic pain. Defendant refused to comply with the Form 18M. After this Form was filed with the Commission on November 15, 1999, the Executive Secretary issued an Order on January 10, 2000, directing that the matter be set for hearing on the Form 18M.
6. On March 20, 2000, Dr. Lafavore found plaintiff would benefit from psychological treatment to enable her to cope with her chronic pain. However, defendant refused to authorize this treatment. Dr. Lafavore has also recommended that plaintiff be evaluated by a neurologist, Dr. Menard. However, defendant scheduled an appointment with Dr. Wheeler in Charlotte rather than Dr. Menard in Hickory. Plaintiff refused to attend the appointment due to the travel.
7. At the time of the hearing, the plaintiff was twenty-eight years old. She was prescribed narcotic pain medications Oxycontin and Hydrocodone, as well as anti-inflammatory, anti-depressant and anti-seizure medications.
8. Plaintiff's chronic pain is causally related to the compensable injury.
9. On June 13, 2000, Dr. Andrea Stutesman evaluated plaintiff, recommending physical therapy, neuromuscular stimulator, exercise, and non-narcotic pain medications. Although the deputy commissioner gave specific instructions at the hearing to Chris Gywn, the medical rehabilitation professional, that Dr. Stutesman was to confer with Dr. Lafavore to determine whether other treatment was available for plaintiff, these instructions apparently were not followed. Instead, Dr. Stutesman began a change of treatment and issued directives to plaintiff and Dr. Lafavore. The Full Commission finds that defendant is not accountable for the conduct of Dr. Stutesman and that she is not their agent.
10. In June of 2000, plaintiff finally received the supplies for her TENS unit.
11. Plaintiff requires medical follow-up every four months while she is on narcotic pain medications.
12. Dr. Lafavore has tried a number of different pain medications to relieve plaintiff's pain since 1997. While he has indicated that he is not aware of any other option at this time, it would not necessarily benefit plaintiff to transfer her care to another doctor for pain management.
13. Plaintiff would benefit from a neurological evaluation as recommended by Dr. Lafavore.
 ***********
The foregoing findings of fact engender the following
 CONCLUSIONS OF LAW
1. Plaintiff is entitled to reasonable treatment directly related to her compensable injury. N.C. GEN. STAT. § 97-25; Pittman v. Thomas Howard, 122 N.C. App. 124, 468 S.E.2d 283 (1996). In the instant case, plaintiff has carried the burden of proof to establish that her chronic pain condition is causally related to the compensable occupational diseases. Therefore, she is entitled to have the defendant pay for pain management treatment by Dr. Lafavore. She is further entitled to an evaluation by a neurologist and psychologist, as ordered by Dr. Lafavore. Further, plaintiff is entitled to continue with care consistent with the plan of care established by Dr. Stutesman.
2. The plaintiff is entitled to have the defendant pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. GEN. STAT. § 97-2(19).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Defendant shall pay medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act. Defendant shall pay for plaintiff to be evaluated by Dr. Menard, as well as such psychological treatment or evaluation as Dr. Lafavore may order for the compensable injury, and for treatment consistent with the plan proposed by Dr. Stutesman.
2. Defendant's Motion to have Dr. Stutesman named as plaintiff's authorized treating physician is DENIED. Dr. Lafavore shall remain plaintiff's authorized treating physician.
3. Defendant shall pay the costs.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER