***********
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for some modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At all relevant times herein, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff-employee and defendant-employer at all relevant times herein.
3. Atlantic Mutual Insurance Company is the carrier on the risk.
4. Plaintiff's average weekly is $360.20 per week.
5. The employee sustained an injury by accident in the course of her employment on November 2, 2000.
6. This claim for a right knee injury was accepted by defendants on a Form 21 Agreement for Compensation approved by the Commission on May 23, 2001.
7. The parties stipulated to the admission of the following into evidence:
1. Medical records of plaintiff from Dr. W. Stephen Tankersley
2. Any documents produced through discovery
3. Plaintiff's personnel file
8. The issues before the Commission are whether plaintiff's right shoulder problems are related to plaintiff's admitted injury by accident of November 2, 2000, and, if so, what compensation is due plaintiff.
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with some modifications as follows:
 FINDINGS OF FACT
1. On November 2, 2000, plaintiff was employed as a hair stylist for MasterCuts. On that date, plaintiff was hanging up posters when she sustained an injury to her right knee. The EMS reports reflect that when the EMTs arrived at the accident scene, plaintiff was lying on the floor. Plaintiff told the EMTs that she was on a small ladder and felt her knee give way. The report also reflects that plaintiff told the EMTs that she did not fall. At that time, she was complaining of pain to her right knee.
2. At the hearing before the Deputy Commissioner, plaintiff testified that she fell off a stepladder onto a concrete floor and twisted her knee. Plaintiff also testified that when she hit the floor, she blacked out and when she awoke, she was lying on her right side.
3. Plaintiff was transported by ambulance to Northeast Medical Center in Concord. Plaintiff initially received treatment from Dr. Rolland Phillips, an emergency room physician. Her chief complaint was that she felt her knee give way. At that time, plaintiff denied any other pain, trauma, or injury associated with the fall. X-rays taken at the emergency room showed a probable tibial plateau fracture. Dr. Phillips stated in his deposition that it was his opinion that it is more likely than not that plaintiff's shoulder injury did not occur as a result of her fall. Dr. Phillips testified that based on the EMS report, plaintiff did not fall, but that her knee gave way.
4. The nurse's notes for this emergency room visit similarly reflect that plaintiff stated she was standing on a ladder and felt her knee give way.
5. On November 6, 2000, plaintiff sought treatment from Dr. Stephen Tankersley at Northeast Orthopedics. Dr. Tankersley's records report that plaintiff had a fall at work and suffered an injury to her right knee. On November 21, 2000, Dr. Tankersley confirmed Dr. Phillips' diagnosis of a right posterior tibial plateau fracture. Dr. Tankersley prescribed conservative treatment for plaintiff. Dr. Tankersley also prescribed physical therapy for plaintiff's knee.
6. On February 3, 2001, Dr. Tankersley released plaintiff to return to work at modified duty. On March 13, 2001, Dr. Tankersley reported plaintiff was working full time. As of March 13, 2001, Dr. Tankersley found that plaintiff had reached maximum medical improvement and was ready for an impairment rating.
7. On May 22, 2001, plaintiff, for the first time, complained of pain in her right shoulder to Dr. Tankersley. Dr. Tankersley injected her shoulder and also took x-rays. Dr. Tankersley stated in his deposition that plaintiff reported to him that shoulder pain had been a daily problem relating back to the date of the compensable accident. Dr. Tankersley felt that the shoulder pain should have appeared before May 2001 if it were a result of the accident. However, Dr. Tankersley also stated that it was not uncommon that a person with a significant injury to a part of the body focuses on that injury rather than to lesser concomitant injuries to other parts of the body.
8. On June 29, 2001, Dr. Tankersley assigned a fifteen percent (15%) permanent functional impairment rating to plaintiff's right knee.
9. On July 17, 2001, Dr. Tankersley reported that plaintiff had a right shoulder impingement and ordered an MRI. On August 17, 2001, Dr. Tankersley reported that the MRI showed a labral cyst consistent with a labral tear.
10. This claim for injury to plaintiff's right shoulder was denied by the carrier as being unrelated to the original injury of November 2, 2000. Plaintiff then filed a Form 33 Request that Claim be Assigned for Hearing.
11. Plaintiff testified at the Deputy Commissioner hearing that she did not complain of any injury to her right shoulder when she was seen at the emergency room because she was in so much pain from her knee. Plaintiff testified that she did not notice any shoulder pain until approximately two months after the accident, when she started moving around. She also testified that during the first two months she was very inactive at home.
12. Elizabeth Middleton, the store manager, testified that when plaintiff returned to work on February 3, 2001, she was able to do her job and returned to work full duty in March 2001. Ms. Middleton testified she did not know plaintiff was having shoulder problems until she received a call from the home office informing her that plaintiff had filed a claim for workers' compensation benefits as a result of injury to her right shoulder. Plaintiff testified she first told Ms. Middleton she was having problems with her right shoulder some time in April 2001 when they were taking a cigarette break. Ms. Middleton also testified she never observed plaintiff having any trouble doing her job because of shoulder pain. She testified plaintiff was currently working full time and was able to perform her job.
13. The Deputy Commissioner did not find plaintiff's testimony that she injured her right shoulder when she fell to the floor from a stepladder on November 2, 2000 to be credible. The Full Commission declines to reverse the Deputy Commissioner's credibility determination. The greater weight of the medical testimony also shows that plaintiff did not actually fall from a stepladder on November 2, 2000 but that her knee twisted and then she sat on the floor. Because Dr. Tankersley's opinion that plaintiff's shoulder injury is causally related to the compensable injury by accident is based upon plaintiff's description of a fall to the floor, his opinion is given little weight.
14. The greater weight of the evidence of record shows that plaintiff's shoulder injury is not causally related to the compensable injury by accident of November 2, 2000.
 ***********
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff has an ongoing presumption of disability based upon the Form 21 Agreement approved by the Industrial Commission on May 23, 2001.Kisiah v. W.R. Kisiah Plumbing, 124 N.C. App. 72, 476 S.E.2d 434, disc.review denied, 345 N.C. 343, 483 S.E.2d 169 (1997); Franklin v. BroyhillFurniture Industries, 123 N.C. App. 200, 472 S.E.2d 382 (1996).
2. "If additional medical treatment is required, there arises a rebuttable presumption that the treatment is directly related to the original compensable injury and the employer has the burden of producing evidence showing the treatment is not directly related to the compensable injury." Reinninger v. Prestige Fabricators, Inc., 136 N.C. App. 255,259, 523 S.E.2d 720, 723 (1999), quoting Pittman v. Thomas Howard,122 N.C. App. 124, 130, 468 S.E.2d 283, 256, disc. review denied,343 N.C. 513, 472 S.E.2d 18 (1996); Parsons v. Pantry, Inc.,126 N.C. App. 540, 485 S.E.2d 867 (1997).
3. In this case, defendants met the burden of establishing that plaintiff's shoulder condition was not a result of her compensable injury by accident on November 2, 2000 or causally related to her employment. The greater weight of the evidence showed that plaintiff did not state that she fell or complain of a shoulder injury to the EMTs, that plaintiff did not report a shoulder injury to the medical providers until seven months after the compensable injury by accident, that the shoulder pain should have appeared prior to May 2001 if it resulted from the compensable accident, and that plaintiff's testimony concerning a fall that caused the shoulder injury was not credible.
4. Plaintiff did not sustain an injury by accident to her right shoulder arising out of and in the course of her employment with defendant-employer on November 2, 2000 and therefore she is entitled to no additional benefits under the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Under the law, plaintiff's claim for additional benefits must be and is hereby DENIED.
2. Each side shall pay its own costs.
This the ___ day of January 2003.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_____________ THOMAS J. BOLCH COMMISSIONER