WILLIAM PITTMAN, Plaintiff-Employee v. THOMAS & HOWARD, Defendant-Employer, and LIBERTY MUTUAL INSURANCE COMPANY, Defendant-Carrier

No. 9410IC663

(Filed 2 April 1996)

**1. Workers' Compensation § 452 (NCI4th)— judicial review of Commission's award—standard**

In passing upon an appeal from an award of the Industrial Commission, the reviewing court is limited in its inquiry to two questions of law: whether there was any competent evidence

before the Commission to support its findings of fact, and whether the findings of fact supported its conclusions of law.

**Am Jur 2d, Workers' Compensation §§ 708-712.**

**Matters concluded, in action at law to recover for the same injury, by decision or finding made in workmen's compensation proceeding. 84 ALR2d 1036.**

2. **Workers' Compensation § 162 (NCI4th)— current back condition unrelated to prior injury—finding supported by competent evidence**

The Industrial Commission did not err by failing to find that plaintiff's current condition involving the lumbar spine was directly related to his original injury, since there was competent evidence in the record to support the Commission's findings that the treating physician "could not relate plaintiff's lumbar spinal stenosis to any specific hour or event in plaintiff's work life or daily life" and that "lumbar spinal stenosis can be a dormant condition that becomes symptomatic just by performing daily duties and other activities."

**Am Jur 2d, Workers' Compensation §§ 263-271, 317-319.**

**Workers' compensation: coverage of employee's injury or death from exposure to the elements—modern cases. 20 ALR5th 346.**

3. **Workers' Compensation § 426 (NCI4th)— finding of fact as conclusion of law—conclusions of law supported by findings**

The Commission's finding that "[p]laintiff's worsening condition is due to severe lumbar spinal stenosis, which was not caused by the incident of 25 August 1987" was both a finding of fact and conclusion of law which sustained its decision to reject plaintiff's claims for further compensation for change of condition and additional medical treatment, and because competent evidence supported the Commission's findings and those findings in turn supported its conclusions of law, the Commission did not err in denying plaintiff's claims; furthermore, the Commission's decision was unaffected by any prejudicial error in its use of different reasoning or in its denominating solely as a finding of fact

the conclusion that plaintiff's lumbar spinal stenosis was not caused by his original injury. N.C.G.S. §§ 97-25 and 97-47.

**Am Jur 2d, Workers' Compensation § 652.**

Appeal by plaintiff from Opinion and Award entered 22 March 1994 by the North Carolina Industrial Commission. Heard in the Court of Appeals 23 February 1995.

*Perry, Brown & Levin, by Cedric R. Perry and Charles E. Craft, for plaintiff-appellant.*

*Cranfill, Sumner & Hartzog, L.L.P., by P. Collins Barwick, III, for defendant-appellees.*

JOHN, Judge.

Plaintiff William Pittman appeals an Opinion and Award of the North Carolina Industrial Commission (the Commission) denying his claims for additional compensation and further medical treatment. He contends the Commission erred by: (1) concluding that one deputy commissioner possesses no authority to modify the previous order of another commissioner; and (2) failing to find that his current condition was attributable to a previous compensable injury. For the reasons set forth herein, we affirm the decision of the Commission.

Pertinent facts and procedural information are as follows: Plaintiff was employed by defendant Thomas & Howard, now operating under the name Nash-Finch, as a truck driver. While so employed on 25 August 1987, plaintiff sustained an injury to his back. Dr. Nelson T. Macedo, a neurosurgeon, indicated plaintiff suffered from congenital cervical spinal stenosis, a condition related to development of the spine, and that his difficulties following the injury resulted from "a combination of the accident plus the fact that he had that condition before."

On 1 March 1990, the parties entered into an Agreement of Settlement (the Agreement), which provided for a lump sum payment of $5,500.00 to plaintiff. The Agreement stated it was subject to approval of the Commission "by its award" and that it became binding on the parties upon such approval. The Agreement also provided:

[T]he parties herein agree that Employee shall retain his right to claim additional compensation benefits, subsequent to the date on which this agreement is approved by the North Carolina

Industrial Commission, to the extent that he is allowed to do so pursuant to North Carolina [G]eneral Statute §97-47, and, additionally, the parties herein agree that Employee shall retain his right to claim additional medical expenses, subsequent to the date on which this agreement is approved by the North Carolina Industrial Commission, to the extent that he is allowed to do so pursuant to North Carolina General Statute §97-25.

On 26 March 1990, Commissioner J. Harold Davis (Davis) issued an order (the Davis order) approving the agreement. However, this order provided for payment of medical bills only through 1 March 1990 "and no further," and also stated:

Compliance with the agreement and the foregoing award shall fully acquit and discharge defendants from further liability under the Compensation Act by reason of the injury giving rise to this case.

None of the parties appealed the Davis order nor requested a hearing for purposes of resolving seeming inconsistencies between that order and the Agreement.

Plaintiff subsequently filed a "Request that Claim be Assigned for Hearing," alleging nonpayment of medical bills "on or about 19 March 1990." Defendants contended in response that plaintiff had not properly submitted the bills and agreed to payment of the bills upon submission to and approval by the Commission. Plaintiff thereupon withdrew his request for hearing.

In an 11 February 1991 order reciting plaintiff's withdrawal of the hearing request, Deputy Commissioner Lawrence B. Shuping, Jr. (Shuping), apparently *sua sponte*, also stated that Davis had "mistakenly treated" the Agreement as one releasing all rights of plaintiff to claim further compensation and/or medical benefits. Shuping thereupon ordered (the Shuping order) the last paragraph (quoted above) of the Davis order stricken so as to correct Davis' "clerical error." No appeal was taken from the Shuping order.

As a result of deterioration in his condition and a medical recommendation for surgery, plaintiff subsequently filed both a "Request that Claim be Assigned for Hearing," seeking payment for the recommended surgery and other medical expenses *per* N.C.G.S. § 97-25 (1991), as well as an "Application for Review of Award" pursuant to N.C.G.S. § 97-47 (1991). Following hearing on 10 June 1992, Deputy Commissioner John Charles Rush ruled "plaintiff did not experience

**PITTMAN v. THOMAS & HOWARD**

[122 N.C. App. 124 (1996)]

a substantial change in condition in his back caused by the August 25, 1987 injury" and denied plaintiff's claims.

Plaintiff thereupon appealed to the Full Commission which on 22 March 1994 filed an Opinion and Award setting forth the following "Conclusions of Law":

> 1. A Deputy Commissioner is without authority to overrule or act in a contrary manner to any action taken by a Commissioner. *See generally, Ivey v. Fasco Industries*, 101 N.C. App. 371, 399 S.E.2d 153 (1991).

> 2. Deputy Commissioner Shuping's Order of 11 February 1991 was issued without the authority to amend the previous order of Commissioner Davis of 26 March 1990. Therefore, Commissioner Davis' Order of 26 March 1990 remains in full force and affect [sic]. *Id.*

> 3. As a result, plaintiff is not entitled to further compensation under the Act. *Id.*

The Commission also found as a fact that

> [p]laintiff's worsening condition is due to severe lumbar spinal stenosis, which was not caused by the incident of 25 August 1987.

Plaintiff gave notice of appeal to this Court 11 April 1994.

We first consider plaintiff's assertion that the Commission "erred in its finding that the plaintiff's condition was not attributable to his injury of 25 August 1987." This contention is unfounded.

[1]   While *Andrews v. Fulcher Tire Sales and Service*, 120 N.C. App. 602, 605, 463 S.E.2d 425, 427 (1995) (this Court bound by Commission's findings if supported by "sufficient competent evidence"), may appear to state a new and different standard of review of Commission decisions at the appellate level, *see Davis v. N.C. Dept. of Human Resources*, 121 N.C. App. 105, 116, 465 S.E.2d 2, 9 (1995) (Judge Martin, Mark D., concurring) (emphasizing "need for the appellate division to articulate a consistent standard of review when considering the Commission's factual findings"), we believe the standard continues to be that adopted by our Supreme Court and repeatedly followed in appellate decisions thereafter. Over forty-five years ago, Justice Ervin wrote:

> In passing upon an appeal from an award of the Industrial Commission, the reviewing court is limited in its inquiry to two

questions of law, namely: (1) Whether or not there was *any competent evidence* before the Commission to support its findings of fact; and (2) whether or not the findings of fact of the Commission justify its legal conclusions and decision.

*Henry v. Leather Co.*, 231 N.C. 477, 479, 57 S.E.2d 760, 762 (1950) (citation omitted) (emphasis added). *See also Carroll v. Daniels and Daniels Construction Co.*, 327 N.C. 616, 620, 398 S.E.2d 325, 328 (1990) (Appellate court review is limited to "two questions of law: (1) whether any competent evidence exists before the Industrial Commission to support its findings of fact, and (2) whether the Commission's findings of fact justify its legal conclusions and decision."); *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 432-33, 342 S.E.2d 798, 803 (1986) (Commission's findings "will not be disturbed on appeal if supported by any competent evidence even if there is evidence in the record which would support a contrary finding."); *Morrison v. Burlington Industries*, 301 N.C. 226, 232, 271 S.E.2d 364, 367 (1980) (Court declines to abandon rule that exclusive authority to find facts rests with Commission, and that "such findings are conclusive on appeal when supported by any competent evidence."); *Anderson v. Construction Co.*, 265 N.C. 431, 434; 144 S.E.2d 272, 274 (1965) (Appellate court's "duty goes no further than to determine whether the record contains any evidence tending to support the finding."); *Haponski v. Constructor's Inc.*, 87 N.C. App. 95, 97, 360 S.E.2d 109, 110 (1987) (This Court's review "limited to determining whether any competent evidence supported the Commission's findings and whether such findings are legally sufficient to support the Commission's conclusions of law."); *Carrington v. Housing Authority*, 54 N.C. App. 158, 159; 282 S.E.2d 541, 541-42 (1981) (Commission's findings "may be set aside on appeal only when there is a complete lack of competent evidence to support them.").

Our task in reviewing the Opinion and Award at issue herein, therefore, is to determine if there is *any competent evidence* in the record to support the Commission's findings of fact; in turn, those findings must support its conclusions of law. Moreover, the Commission, and not this Court, is "the sole judge of the credibility of witnesses" and the weight given to their testimony. *Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).

[2] Bearing these principles in mind, we examine plaintiff's second assignment of error, *i.e.*, that the Commission erred by failing to find

that his current condition was attributable to the earlier injury for which he received compensation. Plaintiff advanced claims before the Commission for additional compensation under G.S. § 97-47 and for further medical treatment under G.S. § 97-25.

The former statute provides that, "on the grounds of a change in condition," the Commission may review any previously entered award and terminate, decrease, or increase compensation. *Haponski*, 87 N.C. App. at 104, 360 S.E.2d at 114. We assume *arguendo* that the original Agreement approved by the Commission constituted an award for purposes of G.S. § 97-47. *See Weaver v. Swedish Imports Maintenance, Inc.*, 319 N.C. 243, 247, 354 S.E.2d 477, 480 (1987) (statute "inapplicable unless there has been a previous final award"); *see also Wall v. N.C. Dept. of Human Resources*, 99 N.C. App. 330, 331, 393 S.E.2d 109, 110 (1990), *disc. review denied*, 328 N.C. 98, 402 S.E.2d 430 (1991) (parties' agreement approved by the Commission in settlement of claim "was a final award or judgment of the Commission").

G.S. § 97-25 provides as follows:

Medical compensation shall be provided by the employer. In case of a controversy arising between the employer and employee relative to the continuance of medical, surgical . . . or other treatment, the Industrial Commission may order such further treatments as may in the discretion of the Commission be necessary.

Logically implicit in the authority accorded the Commission to order *additional* compensation under G.S. § 97-47 and *further* medical treatment under G.S. § 97-25 is the requirement that the supplemental compensation and future treatment be directly related to the original compensable injury. *See Gaddy v. Kern*, 32 N.C. App. 671, 673, 233 S.E.2d 609, 611 (1977) (G.S. § 97-47 claimant failed to show that current "headaches were caused by the [original] injury to his left hand"); *Little v. Penn Ventilator Co.*, 317 N.C. 206, 213, 345 S.E.2d 204, 209 (1986) (medical treatment under G.S. § 97-25 includes mitigation of "decline in [an injured employee's] health *due to the compensable injury*" (emphasis added)). Unlike a claim for further compensation under G.S. § 97-47, however, G.S. § 97-25 imposes no "change in condition" requirement. *Hyler v. GTE Products Co.*, 333 N.C. 258, 267, 425 S.E.2d 698, 704 (1993).

In the case *sub judice*, the Commission found as a fact that:

PITTMAN v. THOMAS & HOWARD

[122 N.C. App. 124 (1996)]

8. Plaintiff returned to Dr. N.T. Macedo on 28 October 1991, reporting continuing numbness in his hands and the deteriorating ability to walk in a normal fashion. These were residual effects of the surgery for congenital cervical spinal stenosis. After conducting tests, Dr. Macedo concluded that plaintiff's worsening physical condition was due to tightness in the lumbar region of plaintiff's spine and recommended surgery. Dr. Macedo noted that if the lumbar decompression laminectomy procedure was not performed, plaintiff's condition would continue to worsen. In Dr. Macedo's opinion, at the time plaintiff suffered from cervical spinal stenosis he also had asymptomatic lumbar spinal stenosis which did not become symptomatic until 1991.

9. In a letter dated 27 January 1992, Dr. Macedo noted that plaintiff suffered an aggravation of his 25 August 1987 accident, and that his current problems are directly related to the events of that date. (Plaintiff's Deposition Exhibit 2) In his deposition, Dr. Macedo explained this statement by noting that the residual problems with plaintiff's walking and his hesitant gait and of spasticity from the cervical spinal stenosis surgery have not entirely gone away. Further, Dr. Macedo noted that he could not relate plaintiff's lumbar spinal stenosis to any specific hour or event in plaintiff's work life or daily life. According to Dr. Macedo, lumbar spinal stenosis can be a dormant condition that becomes symptomatic just by performing daily duties and other activities. Dr. Macedo opined that the recommended surgery for lumbar spinal stenosis would not remedy plaintiff's gait problems.

10. Plaintiff's worsening condition is due to severe lumbar spinal stenosis, which was not caused by the incident of 25 August 1987.

Our review of the evidence reveals that Dr. Macedo examined plaintiff following complaints of tightness in his legs and difficulty in walking. Dr. Macedo testified at deposition as follows:

Q: Okay. And what—what diagnosis have you made of Mr. Pittman's present condition?

A: . . . He has a congenital spinal stenosis, cervical and lumbar spine. The cervical has been corrected. He has residual problems from cord compression from the cervical spinal stenosis, and he has an unresolved problem in the lumbar spine.

Q: Okay. And is it your opinion that the lumbar stenosis has been aggravated by his work?

A:  I think it has, although I don't—I do not have a specific event along in his work life or along his daily work that can pinpoint to that.

. . . .

Q:  Now, you—let me just—you stated that he had residual problems—that presently, he has residual problems from that accident of August '87, and than he has lumbar spinal stenosis. Are you stating that he has residual problems as a result of the August 1987 accident today in addition to the problems that he has as a result of the lumbar spinal stenosis?

A:  No. What I'm saying is this: He had—the residual problems that I'm talking about are the symptoms that he still has despite the fact that we did surgery. In other words, his difficulty walking, his hesitant gait, his spasticity, that has never gone away. It's there, and that's a residual problem from the cervical spinal stenosis. But he still has lumbar spinal stenosis on the top of this problem, you know. Now—

Q:  Now, is the—

A:  —is this lumbar spinal stenosis related to the accident that was—happened August 25th, 1987? I do not have—as I have stated before, I do not have, either in his work life or daily life, any specific event that I can say, "Well, his symptoms in his lumbar spine right now can be related to this thing that happened such a date, such an hour." But I think his symptoms now can be related to the fact that his work—he works on a heavy job that demands a lot from his back.

. . . .

Q:  So, Doctor, would it be fair to say that lumbar spinal stenosis—that you can become symptomatic—it can be a dormant condition that can become symptomatic just by your daily work and other activities.

A:  Yes, it can.

As competent evidence thus existed to support the Commission's findings that Dr. Macedo "could not relate plaintiff's lumbar spinal stenosis to any specific hour or event in plaintiff's work life or daily life" and that "lumbar spinal stenosis can be a dormant condition that becomes symptomatic just by performing daily duties and other activ-

ities," those findings are binding on appeal, even though record evidence might support a contrary finding. *Peoples*, 316 N.C. at 432, 342 S.E.2d at 803. The Commission therefore did not err by failing to find that plaintiff's current condition involving the lumbar spine was directly related to his original injury.

**[3]** Having determined the Commission's findings to be supported by competent evidence, we next consider whether the findings in turn support the Commission's conclusions of law. Indisputably, the Commission failed to present in its conclusions of law a statement specifically addressing plaintiff's claims under G.S. §§ 97-25 and 97-47. The Commission rather appears to have denied plaintiff's claims on the basis that the Davis order "remain[ed] in full force and [e]ffect," thereby limiting defendants' liability to that which plaintiff had previously received.

However, the Commission's finding that "[p]laintiff's worsening condition is due to severe lumbar spinal stenosis, which was not caused by the incident of 25 August 1987," is both a finding of fact and a conclusion of law. *See Haponski*, 87 N.C. App. at 98, 360 S.E.2d at 111 (1987) (determining cause of plaintiff's psychiatric problems is mixed question of law and fact). We therefore may consider the Commission's finding to be a conclusion of law, *see id.* (Commission's designations of "findings" and "conclusions" not binding on this Court), resolving the question of whether the additional compensation and medical treatment presently requested were related to the original compensable injury.

The Commission's findings heretofore examined uphold the legal conclusion that plaintiff's current condition was not related to the original compensable injury and sustain its decision to reject plaintiff's claims for further compensation under G.S. § 97-47 and for additional medical treatment pursuant to G.S. § 97-25. Accordingly, because competent evidence supports the Commission's findings and those findings in turn support its conclusions of law, the Commission did not err in denying plaintiff's claims.

We further determine the Commission's decision was unaffected by any prejudicial error in its use of different reasoning or in its denominating solely as a finding of fact the conclusion that plaintiff's lumbar spinal stenosis was not caused by his original injury. *See MAO/Pines Assoc. v. New Hanover County Bd. of Equalization*, 116 N.C. App. 551, 560-61, 449 S.E.2d 196, 202 (1994) (quoting *Eways v. Governor's Island*, 326 N.C. 552, 554, 391 S.E.2d 182, 183 (1990))

(Property Tax Commission decision proper, albeit reached upon different reasoning from this Court, and unaffected by any prejudicial error because "[w]here a trial court has reached the correct result, the judgment will not be disturbed on appeal even where a different reason is assigned to the decision.").

In view of our decision rejecting plaintiff's second assignment of error, it is unnecessary to address his first argument relating to the authority of one deputy commissioner to modify the order of another deputy commissioner.

The final decision of the Commission is therefore affirmed.

Affirmed.

Judges JOHNSON and MARTIN, Mark D. concur.