***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioners Pfeiffer and Glenn, and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission hereby reverses Deputy Commissioner Glenn's Opinion and Award and enters the following Opinion and Award.
 ***********
Based upon all the competent evidence of record, and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACTS
1. On February 11, 1998, plaintiff was employed by Siemens Power Transmission as an Applications Engineer.
2. On that date, plaintiff was on a business trip in Raleigh, North Carolina, where he was involved in a motor vehicle accident. According to plaintiff, he was stopped on an exit ramp of I-440 in Raleigh when the vehicle he was driving was rear-ended by another vehicle.
3. Defendants accepted plaintiff's injury as compensable and provided medical treatment to plaintiff. Plaintiff missed no time from work as a result of the motor vehicle accident.
4. Following his injury, plaintiff was treated at Wake Medical Center in Raleigh, where x-rays revealed no fractures, possible cervical muscle spasm, and mild C5-C6 disc space narrowing.
5. Thereafter, on February 19, 1998, Plaintiff began treating with Dr. Delores Peterson, his family physician, in New Jersey. After an examination, Dr. Peterson diagnosed plaintiff with severe musculoskeletal strain and referred plaintiff to physical therapy.
6. In March 1998, Dr. Peterson referred plaintiff for an MRI, which was negative, and a CT scan, which revealed only a mild bulging disc at C5-C6.
7. On May 22, 1998, Plaintiff presented to Dr. Bruce Lipsius for a neurological evaluation. After a normal neurologic evaluation, Dr. Lipsius determined that plaintiff had symptoms of post-traumatic cervical sprain with associative post-traumatic headaches, and prescribed pain medication.
8. From November 1, 1998, to October 19, 1999, plaintiff received pain management treatment from Dr. Barry Korn, consisting of trigger point injections and percutaneous electrical nerve stimulation to the cervical area.
9. On December 10, 1998, plaintiff returned to Dr. Peterson, complaining of headaches, numbness in the nose and palate, cervical spine pain, bowel and bladder urgency, extremely cold hands and feet, insomnia, and pain in his right knee.
10. On July 28, 1999, Dr. Nathaniel Evans performed an independent medical examination of plaintiff. Dr. Evans' physical examination revealed no objective findings to account for plaintiff's reported symptoms. Dr. Evans further noted that Dr. Korn's documented findings were totally unsupported by objective evidence. As a result, Dr. Evans determined that plaintiff suffered from cervical muscle strain that had resolved.
11. As a result of his independent medical examination, Dr. Evans further determined that plaintiff's complaints of foot pain, headaches, bowel and bladder dysfunction, and neurological dysfunction were unrelated to the February 1998 motor vehicle accident.
12. On July 28, 1999, Dr. Evans determined that plaintiff needed no further treatment and that he had reached maximum medical improvement with respect to injuries suffered as a result of the February 1998 motor vehicle accident.
13. Based on Dr. Evans' examination, Defendants ceased providing medical compensation to plaintiff shortly after July 28, 1999.
14. Nevertheless, plaintiff continued to seek treatment for his alleged injuries and on February 11, 2000, he began treating with Dr. Arun Kachroo for complaints of foot pain, numbness, headaches, and bowel and bladder urgency. Dr. Kachroo noted plaintiff's previous MRI, which was normal except for the mild C5-C6 disc bulge. Dr. Kachroo ultimately diagnosed plaintiff with systemic neuropathy and prescribed Neurontin and Ultram for pain and Zoloft for depression.
15. On June 6, 2000, Dr. Peterson determined that plaintiff had reached maximum medical improvement with regard to his post-traumatic headaches, cervical thoracic strain, and paresthesias. Dr. Peterson further noted that plaintiff's bladder and bowel dysfunction were unrelated to his February 1998 motor vehicle accident.
16. On January 12, 2001, plaintiff was referred to Dr. Steven Scherer at the University of Pennsylvania Medical Center. It was Dr. Scherer's opinion that plaintiff suffered a mild cervical spinal cord contusion as a result of the February 1998 motor vehicle accident. However, Dr. Scherer did not believe that plaintiff's headaches arose from this etiology.
17. Pursuant to a referral from Dr. Scherer, on February 2, 2001, plaintiff was evaluated by Dr. Paul Marcotte at Pennsylvania Neurological Institute. During his evaluation, Plaintiff described a sensation of "electrical shocks" to his arms and legs. After reviewing Plaintiff's MRI results, Dr. Marcotte determined that plaintiff's symptoms were not a result of his bulging cervical disc. Dr. Marcotte further stated that he saw no evidence of spinal cord or nerve root compression. Dr. Marcotte ultimately referred plaintiff back to his treating physicians.
18. On June 20, 2001, Dr. John Yang performed an independent neurological evaluation of plaintiff. On that date, plaintiff reported chronic pain in his entire body, migraine headaches, bowel and bladder urgency, limited range of motion in his neck, and cognitive impairment. After examining plaintiff, Dr. Yang found no objective neurological abnormality. Dr. Yang further determined that plaintiff had reached maximum medical improvement from a neurological standpoint.
19. On December 3, 2002, plaintiff presented to Dr. Brenda Ivker for a neuropsychological evaluation. In addition to his physical symptoms, plaintiff described short-term memory deficit, diminished attention span, difficulty concentrating, difficulty with mathematics, and irritability. After performing a series of tests, Dr. Ivker determined that plaintiff's cognitive functioning was consistent with a head injury. However, Dr. Ivker opined that plaintiff's particular head injury appeared too mild to fully account for his dysfunction. Dr. Ivker opined that plaintiff's symptoms might be related to emotional issues.
20. In his deposition, Dr. Yang testified that an MRA and MRI of plaintiff's brain showed no evidence of a brain injury and that an EMG showed no evidence of cervical radiculopathy. Although Dr. Yang testified that the EMG showed focal compression neuropathy of the left ulnar nerve, Dr. Yang declined to express an opinion as to whether the neuropathy was related to the February 1998 motor vehicle accident. Dr. Yang also expressed no opinion as to whether plaintiff's bowel and bladder dysfunction was related to the February 1998 motor vehicle accident.
21. Dr. Yang also testified regarding an alleged herniated disc. The medical evidence in the record indicates that an MRI of plaintiff's spine taken in March 1998, a few weeks after the compensable accident, showed no disc herniation. However, a subsequent MRI taken in January 2001 did reveal a disc herniation. According to Dr. Yang, if plaintiff had suffered a herniated disc as a result of the February 1998 motor vehicle accident, that condition would have shown up on the March 1998 MRI. Since the disc condition did not show up until January 2001, Dr. Yang opined that plaintiff's herniated disc was not a result of the 1998 accident.
22. Dr. Yang also testified at his deposition that all positive findings on his examination of plaintiff were based on plaintiff's subjective complaints and were not and could not be corroborated by objective means. Dr. Yang found no objective evidence of a spinal cord contusion, no objective evidence of a brain injury, and no objective evidence to support plaintiff's alleged need for pain management. As of June 2001, Dr. Yang testified that plaintiff did not require any additional medical treatment.
23. Dr. Evans, like Dr. Yang, testified in his deposition that no objective findings existed to support plaintiff's current complaints. Dr. Evans testified that he found no objective evidence of brain injury or any evidence of cervical nerve compression, irritation, or damage to the neck.
24. Dr. Evans further testified that plaintiff's EMG following the February 1998 accident precluded the existence of nerve impairment or nerve irritation. Dr. Evans testified that the finding of a bulging disc on the March 1998 MRI was of no medical significance. Like Dr. Yang, Dr. Evans testified that plaintiff's disc herniation revealed by the January 2001 MRI was not related to the February 1998 motor vehicle accident in light of the fact that a March 1998 MRI did not reveal a herniation.
25. Dr. Evans did admit that plaintiff likely suffered muscle strain as a result of the February 1998 accident, but according to Dr. Evans, this condition had resolved as of his July 28, 1999, evaluation.
26. Dr. Evans also testified that plaintiff's current complaint of headaches is unrelated to the 1998 accident. According to Dr. Evans, headaches associated with trauma are more constant and persistent, occurring more often than two times per month, as plaintiff's headaches occur.
27. Dr. Evans further testified that plaintiff's bowel and bladder complaints and his alleged neurologic dysfunction are unrelated to the motor vehicle accident in light of plaintiff's normal EMG study and Dr. Evans' examination of plaintiff.
28. Dr. Evans testified that he saw no need for further medical treatment for plaintiff following his July 28, 1999, evaluation.
29. On January 24, 2002, plaintiff began treating with Dr. Jeanne Doherty who referred plaintiff to a pain management program. On March 14, 2002, Dr. Doherty determined that plaintiff had reached maximum medical improvement with respect to his chronic pain and cognitive deficits.
30. During her deposition on January 30, 2003, Dr. Doherty admitted that her diagnosis of chronic pain syndrome was based entirely on plaintiff's subjective complaints and that no objective findings exist to support her diagnosis. Dr. Doherty testified that her other diagnoses of plaintiff's condition were similarly based on plaintiff's subjective complaints and not supported by objective findings. Dr. Doherty further testified that it was difficult to determine whether plaintiff's complaints were caused by a head injury or were behavior-related illnesses.
31. Despite the fact that Dr. Doherty found plaintiff to be at maximum medical improvement, it is clear from her deposition testimony that plaintiff continues to suffer from multiple problems of unknown or undiagnosed etiology. As Dr. Doherty found, it is unclear whether plaintiff's complaints are from a head injury or a behavior-related illness; however, it is clear that the litany of medical problems that afflict plaintiff appear to begin with the admittedly compensable accident on February 11, 1998. Thus, the Full Commission finds there to be sufficient evidence, including plaintiff's own testimony in regard to his ongoing pain, that plaintiff is in need of continuing medical treatment despite the fact that he has reached maximum medical improvement with respect to his injuries.
32. The Full Commission finds there to be insufficient evidence to make a determination as to the issue of whether plaintiff is due further disability compensation. Thus, the Full Commission deems it appropriate to remand this matter to a deputy commissioner for the taking of additional evidence regarding plaintiff's disability, if any.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. To prove that plaintiff is entitled to further medical treatment, he must show that the future treatment needed is directly related to his compensable injury. Pittman v. Thomas Howard, 122 N.C. App. 124,468 S.E.2d 283 (1996). Additionally, in determining if a workers' compensation claimant has met his burden of establishing a loss of wage-earning capacity, the Industrial Commission must consider not only the claimant's physical limitations, but also his testimony as to his pain in determining the extent of incapacity to work and earn wages that such pain might cause. Knight v. Wal-Mart Stores, Inc., 149 N.C. App. 1,6, 562 S.E.2d 434, 438 (2002). Similarly, plaintiff's own testimony as to his pain can be considered in determining whether plaintiff should receive continuing medical benefits. In the present case, there is sufficient evidence of record to support plaintiff's need for continuing medical compensation to effect a cure, give relief, or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
2. The fact that plaintiff has been found to be at maximum medical improvement with respect to a number of his injuries that are causally related to the compensable accident is not determinative in this matter. The primary significance of the concept of maximum medical improvement is to delineate a crucial point in time only within the context of a claim for scheduled benefits, which does not have any direct bearing upon an employee's right to continue to receive temporary disability benefits.Knight v. Wal-Mart Stores, Inc., 149 N.C. App. 1, 6, 562 S.E.2d 434, 438
(2002). Similarly, the fact that plaintiff may be at maximum medical improvement does not have any bearing on his right to continuing medical benefits.
 ***********
Based upon the foregoing findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury by accident for so long as such examinations, evaluations and treatments tend to affect a cure, give relief or lessen his disability.
2. Defendants shall pay the costs due the Commission.
 *********** ORDER REMANDING
This claim is hereby remanded to Chief Deputy Commissioner Stephen T. Gheen for assignment to a deputy commissioner for further hearing (if necessary) following the submission of additional evidence as to plaintiff's disability, if any. Plaintiff's eligibility for further compensation under the Act beyond the medical compensation awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of additional evidence or further hearings. The deputy commissioner is directed to consider the evidence of a possible credit due defendants pursuant to N.C. Gen. Stat. § 97-42 for their payment of short- and long-term disability benefits to plaintiff.
This the 16th day of February 2004.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER