***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Ledford with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at and following the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. The Industrial Commission has jurisdiction over the parties and the subject matter in this case.
2. At the time of the injury giving rise to this claim, November 21, 2003, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. At such time, an employment relationship existed between Plaintiff-Employee and Defendant-Employer.
4. Plaintiff was entitled to compensation arising out of a November 21, 2003, low back strain from the date of injury until Plaintiff was released to light duty on January 6, 2004. Plaintiff was paid all compensation to which she was entitled during this period as evidenced by the printout of benefits.
5. Plaintiff was released to full duty work with no restrictions on January 12, 2004, and returned to full duty work on January 13, 2004. She continued to work for Defendant-Employer until March 23, 2006.
6. Plaintiff received short term disability benefits in the amount of $1,027.00 per month from April of 2006 to September of 2006. Plaintiff received long term disability benefits in the amount of $1,027.00 per month from October of 2006 to October of 2007.
7. American Home Assurance was the carrier on the risk for Employer-Defendant, and Claims Management, Inc. was the Third Party Administrator.
8. Plaintiff earned an average weekly wage of approximately $510.00, yielding a weekly comp rate of $340.02.
9. The following exhibits were stipulated into the record before the Deputy Commissioner:
 a. Pre-Trial Agreement, *Page 3 
 b. Plaintiff's Medical Records,
 c. Industrial Commission Forms,
 d. Printout of Benefits Paid,
 e. Personnel File, and
 f. Plaintiff's Discovery Responses.
10. The following depositions were taken and received into the record before the Deputy Commissioner:
 a. Dr. Thomas Melin (pre-hearing deposition of 2/6/08 and post-hearing deposition of 6/23/08),
 b. Dr. Donald D. Getz,
 c. Dr. Kenneth Willeford,
 d. Dr. Michael M. Marushack (contains his stipulated records as Dep. Exhibit 1),
 e. Dr. John H. Knab,
 f. Carolina Candelaria, MSPT, and
 ***********
As set forth in the Pre-Trial Agreement and this Opinion and Award, the Commission addresses the following:
 ISSUE
1. Whether Plaintiff's current back condition and recent treatment are causally related to her November 21, 2003, lower back strain injury at work?
 *********** *Page 4 
Based upon all of the competent evidence of record, the Full Commission makes the following: FINDINGS OF FACT
1. Plaintiff was employed by Defendant-Employer as a retail sales grocery department manager in its Southport, NC, store.
2. Pursuant to stipulation and a Form 60, Plaintiff sustained a compensable "low back strain" injury at Defendant-Employer's store on November 21, 2003, when she slipped and fell in a freezer while moving a pallet, landing on her buttocks.
3. Following the work injury of November 21, 2003, Plaintiff treated the next day at the Dosher Memorial Hospital ER for back pain, where she was examined and diagnosed with a back contusion. Lumbar x-rays were negative for fracture or dislocation but did show pre-existing degenerative disc disease of the lumbar spine. Plaintiff specifically denied pain radiation to the legs.
4. On December 1, 2003, Plaintiff began treating with authorized provider Dr. Peter D. Almirall at Oak Island Medical Center. Plaintiff again denied radicular pain symptoms, and straight leg raise testing was negative bilaterally. Dr. Almirall diagnosed a lumbar strain and wrote Plaintiff out of work.
5. During December of 2003, Plaintiff returned to Dr. Almirall twice more for examination and treatment of her low back strain injury and reported consistent improvement in her low back pain. Plaintiff underwent a course of low back physical therapy from December 9, 2003, through January 5, 2004.
6. On January 5, 2004, Plaintiff returned to Dr. Almirall and reported that she had "done well with physical therapy," that she was able to travel in a car without back pain and *Page 5 
could walk and bend with no complaints. Dr. Almirall's physical examination found no low back tenderness, full range of motion of the back with no restriction, and normal motor sensation. Dr. Almirall diagnosed a "resolving lumbar strain" and released Plaintiff to light work for one week with restrictions of ten (10) pounds lifting, no ladder work, and no twisting or stooping.
7. Plaintiff was paid temporary total disability (TTD) from the date of injury through January 5, 2004. She returned to work for Defendant-Employer on January 6, 2004, within the restrictions assigned by Dr. Almirall.
8. On January 12, 2004, Plaintiff returned to Dr. Almirall, who noted, "She is no longer complaining of any back pain and ambulates well." On examination, Dr. Almirall found full range of motion of Plaintiff's back. Straight leg raise testing was again negative bilaterally for radicular symptoms. Dr. Almirall found that Plaintiff's November 21, 2003, low back strain had "resolved" and released Plaintiff to work at full-duty with no restrictions. Plaintiff resumed her full-duty job with Defendant-Employer the next day.
9. The parties did not depose Dr. Almirall, and his stipulated diagnoses and examination findings are accepted by the Full Commission as competent.
10. On January 21, 2004, Plaintiff complained of non-claim-related right shoulder pain to her primary care physician and was referred to an orthopedist, Dr. Michael M. Marushack of Orthopedic Specialists. Per Plaintiff's hearing testimony, she had had shoulder problems prior to her back injury of Nov. 21, 2003.
11. On March 8, 2004, Plaintiff began treatment with Dr. Marushack for her right shoulder pain complaints. His diagnosis was right rotator cuff tendinitis. Dr. Marushack ordered a right shoulder MRI which, when performed on April 10, 2004, showed evidence of a small, *Page 6 
partial rotator cuff tear. On May 18, 2004, Dr. Marushack performed right shoulder arthroscopic surgery on Plaintiff. Plaintiff treated with Dr. Marushack again in June and twice in November of 2004 for post-surgical follow-up.
12. On February 9, 2005, at her seventh office visit with Dr. Marushack, and after treating with him for eleven (11) months, Plaintiff for the first time complained of low back pain to Dr. Marushack. Plaintiff reported right lower back pain which radiated down her right leg. Dr. Marushack took lumbar x-rays, which revealed degenerative disc disease at L5-S1.
13. Plaintiff did not return to Dr. Marushack for her low back pain complaints until August 15, 2005. At that time, Dr. Marushack ordered a MRI. The August 23, 2005, lumbar MRI report revealed evidence of degenerative disc disease L2-L3, without evidence of spinal stenosis, nerve root impingement, or disc herniation. This MRI report made no findings at L5-S1. After the MRI, Dr. Marushack referred Plaintiff to pain medicine specialist Dr. Kenneth Willeford at Coastal Carolinas Integrated Medicine.
14. Dr. Willeford treated Plaintiff for pain management for her back from September 21, 2005, through April 24, 2006. Dr. Willeford treated Plaintiff for a variety of working diagnoses including spondylosis and sacroiliitis and administered injections for both conditions. During this period, Plaintiff also underwent physical therapy with Carolina Candelaria, MSPT.
15. Per Dr. Willeford's testimony, when Plaintiff first presented to him on September 21, 2005, she reported that her back pain began with a fall one year prior but that her pain from the fall had "improved," and that her current back pain symptoms had just started about six to eight months previously. The Full Commission finds that Plaintiff most likely intended to report the history of the 2003 fall at work, which was closer to two years prior, but further finds that the report of improvement and then a more recent back pain onset of 6-8 months prior coincides with *Page 7 
the beginning of Plaintiff's reporting of back pain symptoms to Dr. Marushack in February of 2005.
16. On April 21, 2006, Plaintiff came under the care of Dr. Thomas E. Melin, a neurosurgeon at Coastal Neurosurgical Associates and Spine Center in Wilmington, NC. Dr. Melin reviewed the August 23, 2005, MRI scan and noted that it did show a mildly degenerative disc at the L5-S1 level, contrary to the radiologist's interpretation. Dr. Melin ordered a repeat lumbar MRI which, on April 24, 2006, showed disc bulging at L5-S1.
17. On May 8, 2006, Dr. Melin's PA-C referred Plaintiff to the Center for Pain Management for bilateral SI joint injections. Plaintiff received these injections from Dr. John Knab on May 12, 2006. Plaintiff continued to receive low back pain injections from Dr. Knab during 2006 and thorough 2007.
18. On June 26, 2006, Dr. Melin arrived at a formal diagnosis of "lumbar degenerative disc disease." Dr. Melin sent Plaintiff for a discogram which, when performed on July 11, 2006, confirmed a degenerative disc at L2-L3 and revealed the further new finding of an annular tear and herniated disc at L5-S1.
19. The Full Commission finds that the fact that the disc bulge at L5-S1 present on the April 24, 2006, MRI had torn and become herniated by the time of the July 11, 2006, discogram is competent evidence that this disc was in an active degenerative process during 2005 and 2006.
20. On December 14, 2006, Plaintiff underwent a posterior L5-S1 fusion surgery, performed by Dr. Melin. Post-operatively, Plaintiff treated with Dr. Melin through July 23, 2007, at which time Plaintiff was still reporting symptoms of post-surgical bilateral sacroiliitis. *Page 8 
Plaintiff has continued to treat with Dr. Knab at the Center for Pain Management for bilateral SI injections and pain medications.
21. The Full Commission finds, based on the greater weight of the competent evidence of record, that Plaintiff did not experience significant low back pain from the time of her January 12, 2004, full-duty release by Dr. Almirall through her next documented low back pain complaint almost thirteen (13) months later to Dr. Marushack on February 9, 2005.
22. Plaintiff's testimony that she was having unreported, significant low back pain during this thirteen (13) month period is contrary to the greater weight of the competent evidence of record, and is not accepted as credible by the Full Commission.
23. Plaintiff's husband, Paul Elkins, testified that he did not really notice complaints of back pain from his wife until after her shoulder surgery, when she became more active. As she began complaining of back pain, her husband started helping Plaintiff with tasks around the house.
24. The stipulated medical records show that Plaintiff did not report low back pain during this thirteen (13) month period, despite numerous opportunities to do so. During these thirteen months, Plaintiff treated clinically six times with Dr. Marushack, without documented evidence of back pain complaints. Dr. Marushack testified that it was possible that Plaintiff mentioned back pain in passing during these visits, but that if Plaintiff were complaining of significant low back pain during that time, it would have been consistent with his customary routine to document that in his records, which he did not. Plaintiff also treated seven additional times clinically with Dr. Almirall's office, Oak Island Medical Center, during this thirteen month period, also with no documented significant back pain complaints, including a complete physical examination on October 27, 2004. *Page 9 
25. The uniform competent expert medical testimony from Dr. Getz and Dr. Melin, the only other expert deponents to address this issue, was that they would have expected to see evidence of low back pain complaints in Dr. Marushack's records during this thirteen month period if such pain existed.
26. Plaintiff's allegation that her back pain during the thirteen month reporting gap was masked by pain medications and light duty secondary to her shoulder condition and surgery is contrary to the greater weight of the competent evidence of record. Plaintiff was not taking pain medications during most of this thirteen month period. Furthermore, even when she was taking medications for her shoulder, per the medical testimony, the medications she was taking would not have masked low back pain, had it existed.
27. Plaintiff worked full-duty from January 13, 2004, until her shoulder surgery in May, 2004, without objective evidence of low back pain complaints.
28. For the four months after her January 12, 2004, full-duty release until her May 18, 2004, shoulder surgery, Dr. Marushack only prescribed an anti-inflammatory for two months and administered one local shoulder injection, which he testified would have had "pretty minimal" systemic effects outside the shoulder and would be short-lived (per Plaintiff's own report, three to four days). Plaintiff was only prescribed narcotic pain medications for the approximately two to three months after her May 18, 2004, shoulder surgery. Thereafter, for the two and one-half (2 ½) months from November 24, 2004, until her first documented low back pain complaint on February 9, 2005, Plaintiff was only taking Skelaxin (a muscle relaxant) and Ambien (for sleep), both of which Dr. Marushack testified would not mask discogenic pain and are not pain medications. *Page 10 
29. The competent expert medical testimony also establishes that Plaintiff's post-surgical medication regimen with Dr. Marushack would not have masked low back pain, if it had existed. Dr. Getz testified that whatever systemic medication Plaintiff was taking during her treatment with Dr. Marushack did not mask her neck and shoulder pain and there was no reason to believe that it would have masked low back pain. Dr. Getz testified that pain medication only makes pain bearable, and "it doesn't make the pain go away," which is in conformity with Dr. Melin's testimony that "[i]f someone is on pain medication, it can certainly blunt and diminish their perception of pain, but they would still tend to complain of it."
30. Dr. Melin, Plaintiff's treating neurosurgeon, performed surgery to repair Plaintiff's degenerative back condition. Per Dr. Melin, it was possible but "less than probable" that Plaintiff's recent low back pain symptoms and his treatment, including the L5-S1 fusion surgery, were related to the 2003 work injury. Dr. Melin testified that it was not probable because of the lack of back symptoms between the work injury resolution in January of 2004, and the new onset of back pain symptoms thirteen months later in February of 2005. Dr. Melin agreed with Dr. Almirall's records that Plaintiff had fully recovered from the November 2003 low back muscular strain injury at work by January of 2004. Dr. Melin testified that he was suspicious of another inciting event to bring on the new back pain in February of 2005, but that degenerative disc disease can flare-up and become symptomatic with no acute cause.
31. Dr. Melin was tendered at both depositions as an expert in neurological surgery without objection, and he was the only neurosurgeon to testify. He was the only physician of record who personally reviewed all of the actual radiology film images taken of Plaintiff's back over time. Dr. Melin was the only deponent who cut Plaintiff's back open and had opportunity to see inside and actually handle and repair the degenerative disc changes. *Page 11 
32. Dr. Melin's opinion that Plaintiff's back condition from 2005 and forward is more likely than not unrelated to the resolved 2003 low back strain work injury is accepted by the Full Commission as a competent expert neurological opinion and is given the greatest weight of the testifying physicians, along with that of Dr. Getz, who testified as an orthpaedic and spinal specialist.
33. Dr. Donald Getz did not treat Plaintiff but conducted a peer review of all of Plaintiff's medical records, including the records of Dr. Marushack, which were not produced until Dr. Marushack's deposition. Dr. Getz opined that only the initial 2003 ER visit and Dr. Almirall's two months of low back strain treatment were causally related to the November 21, 2003, work injury. While the lack of low back pain complaints for thirteen months was part of the basis for Dr. Getz's opinion, he also explained as a further basis that
 her work injury was a contusion and a back strain and Dr. Melin operated on degenerative disc disease with radiculopathy. They're two entirely different conditions. . . . [The operable L5-S1 disc herniation] was an entirely different condition that wasn't even there at the time she had her back strain.
34. Dr. Getz has 28 years of experience as an orthopedic surgeon, and is board certified in orthopedic surgery and independent medical examination (IME) and was tendered as an expert in both areas. Dr. Getz has seen about 20,000 spinal patients over his career. Dr. Getz was the only orthopedist to offer an expert medical opinion and his causation opinion is accepted as a competent expert orthopedic opinion by the Full Commission. His opinion as to the lack of any causal relationship between Plaintiff's workplace injury and her subsequent back condition is consistent with Dr. Melin's opinion.
35. Dr. Willeford also opined that Plaintiff's back pain condition from 2005 and forward was not related to the work injury of November 21, 2003. Dr. Willeford opined that *Page 12 
Plaintiff's 2003 low back strain at work could not resolve and then come back over a year later without another "precipitating incident," and added, "I have never seen a patient that's had an injury have muscular compensation primary or secondary resolved and it would just return without some history or event that would, you know, be related to the [new] onset."
36. Dr. Willeford demonstrated a full understanding of Plaintiff's entire course of treatment, and the basis of his opinion is in conformity with the analysis of the competent neurosurgical and orthopedic experts. Dr. Willeford's causation opinion is accepted as a competent expert medical opinion by the Full Commission.
37. Dr. Marushack offered competent testimony that, because of "the time span between the [work] fall and when she asked me to start addressing her back pain is long enough," he could not offer an opinion on the cause of Plaintiff's low back condition which he began treating on February 9, 2005. Dr. Marushack testified that he would defer any opinions on Plaintiff's subsequent back care after his treatment, including opinions as to the cause of her back surgery, to the doctors who provided that treatment, which would be Dr. Willeford and Dr. Melin, because, as Dr. Marushack testified, "I don't consider my self to have the expertise they have."
38. Dr. Knab offered testimony purporting to link his pain management treatment from 2006 and forward back to Plaintiff's 2003 work injury, but his testimony is found by the Full Commission to be speculative and lacking an adequate basis and consideration of the material facts of record.
39. Dr. Knab was not aware of materially relevant facts about Plaintiff's 2003 work injury, including its nature, the diagnosis, and its treatment to resolution within two months. Dr. Knab testified that the earliest records he reviewed were from physical therapy with Carolina *Page 13 
Candelaria in October of 2005. Dr. Knab had never seen or reviewed Dr. Almirall's records from his low back strain treatment nor Dr. Marushack's material records from 2004 and 2005 showing the thirteen month gap in Plaintiff's low back pain complaints.
40. Dr. Knab based his testimony on the history he took from Plaintiff that her back pain did not subside after the 2003 work injury, and on his own experiences with his own back pain. Dr. Knab's testimony that back pain can recur after a muscular strain injury without a new inciting event is contrary to the testimony of Dr. Melin, Dr. Willeford, and Dr. Getz, and is not accepted by the Full Commission as competent in basis.
41. Carolina Candelaria, who performed physical therapy on Plaintiff concurrently with Dr. Willeford's 2005 to 2006 treatment, was deposed but was never tendered as an expert. Furthermore, Ms. Candelaria testified that she did not know the material facts about Plaintiff's initial treatment for the 2003 work injury and that she did not know the cause of the low back pain she treated.
42. The Full Commission finds, based on the greater weight of the competent expert medical evidence, that Plaintiff's course of back treatment from February of 2005 and ongoing, including the L5-S1 fusion surgery of December 2006, is not related to Plaintiff's low back muscular strain work injury of November 21, 2003.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On November 21, 2003, Plaintiff sustained an admitted compensable injury by accident arising out of and in the course of her employment when she slipped and fell in a freezer *Page 14 
while moving a pallet. The injury sustained by Plaintiff at that time was a low back strain. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is only entitled to compensation under the Workers' Compensation Act for the back condition for which she began receiving treatment in 2005 if that later back condition is "directly related to the original compensable injury." Pittman v. Thomas Howard,122 N.C.App. 124, 130, 468 S.E.2d 283, 286, disc. review denied,343 N.C. 513, 472 S.E.2d 18 (1996). However, Plaintiff may be entitled to a presumption that the post-2005 back condition is related to her compensable injury pursuant to Parsons v. Pantry, Inc., 126 N.C.App. 540,485 S.E.2d 867 (1997). Insofar as Plaintiff is entitled to such a presumption under Parsons, "[t]he employer may rebut the presumption with evidence that the medical treatment is not directly related to the compensable injury." Perez v. American Airlines/AMR Corp.,174 N.C.App. 128, 135, 620 S.E.2d 288, 292 (2005), disc. reviewimprovidently allowed, 360 N.C. 587, 634 S.E.2d 887 (2006).
3. The Full Commission concludes that, regardless of whether Plaintiff may be entitled to a presumption in her favor under Parsons, Defendants have presented sufficient medical evidence to show affirmatively that Plaintiff's post-2005 back condition is not directly related to Plaintiff's compensable injury. It follows that Plaintiff is not entitled to compensation for her post-2005 back condition under the Workers' Compensation Act, and Plaintiff's claim for additional benefits must therefore be denied. Click v. Pilot Freight Carriers, Inc., 300 N.C. 164,167, 265 S.E.2d 389, 391 (1980).
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following: *Page 15 
 AWARD
1. Plaintiff's claim for compensation for additional medical treatment and related indemnity benefits for her low back strain injury is hereby DENIED.
2. Defendants shall pay the costs.
This the 1st day of June 2009.
S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER