***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives. Therefore, the Full Commission affirms the Opinion and Award of the Deputy Commissioner with minor modifications.
 ***********
The following were entered into evidence by agreement of the parties as:
 STIPULATIONS
1. It is stipulated that all parties are properly brought before the Industrial Commission, are subject to and bound by the provisions of the Workers' Compensation Act, that the Commission has jurisdiction over the parties and of the subject matter, and that an employer-employee *Page 2 
relationship existed between Plaintiff and Employer-Defendant.
2. It is stipulated that all parties have been correctly designated, and there are no questions as to misjoinder or nonjoinder of the parties.
3. It is stipulated that all carriers have been correctly designated, and there are no questions as to insurance coverage of the parties.
4. The parties stipulated into evidence as Stipulated Exhibit # 1, as referenced by the table of contents to include, Pre-Trial Agreement, medical records, and Industrial Commission Forms.
5. Plaintiff's issues are as follows:
 (a) Whether Plaintiff is entitled to further medical treatment for his right shoulder injury, including, but not limited to, evaluation by a shoulder specialist as recommended by his treating physician?
 (b) What amount, if any, is appropriate in this matter to impose on Defendants for Plaintiff's attorney fee pursuant to N.C. Gen. Stat. § 97-88.1
6. Defendant's issues are as follows:
 (a) Whether Plaintiff's right shoulder condition is compensable.
 ***********
The competent credible evidence of record engenders the following:
 FINDINGS OF FACT
1. Defendants admitted liability for Plaintiff's October 19, 2006 right hand multiple finger amputation injuries by filing a Form 60 on November 2, 2006. Plaintiff is right-hand dominant. At the time of the hearing before the Deputy Commissioner, Plaintiff was working for Defendant-Employer in a modified position within his permanent restrictions. *Page 3 
2. On October 19, 2006, Plaintiff's right hand was caught between rollers of a machine, causing him to sustain a significant crush injury, which placed three of his fingers at risk for amputation and which caused a fracture dislocation of his thumb. Plaintiff was initially evaluated at Wayne Memorial Hospital, but was immediately transferred to Duke University Medical Center where he could be treated by hand specialist Dr. David S. Ruch.
3. Dr. Ruch performed several surgical procedures on October 19, 2006, which included amputation of ring degloving injury of the index finger, amputation of degloving injury to the long finger, revascularization of the ring finger, repair of the ulnar digital nerve, open reduction internal fixation of the thumb, carpal tunnel release, release of the ulnar nerve at the wrist, decompressive fasciotomy of the forearm, filet flap of the long finger to assist with wound closure and open reduction internal fixation of the ring finger.
3. Plaintiff had a second surgical procedure on December 8, 2006, which consisted of the excision of necrotic tissue and full-thickness skin grafting.
4. On February 20, 2007, Plaintiff underwent a third surgical procedure when Dr. Ruch removed the hardware from Plaintiff's right thumb.
5. Plaintiff followed up with Dr. Ruch on March 7, 2007. At that time, Dr. Ruch diagnosed Plaintiff with shoulder adhesion. Dr. Ruch recommended therapy for Plaintiff's hand and additional therapy for Plaintiff's right shoulder.
6. On May 22, 2007, Plaintiff underwent a fourth surgical procedure, which consisted of a neuroma excision, a graft from the common digital nerve of the index and ring fingers to the border of the ring finger at the level of the metacarpophalageal joint, a z-plasty x2 to the radial and ulnar border of the ring finger and neurolysis.
7. Dr. Ruch released Plaintiff at maximum medical improvement on August 6, 2007 *Page 4 
with a permanent partial impairment rating of 25% of the thumb, 30% of the ring finger, 10% of the little finger and 100% of the index and long fingers. Plaintiff's permanent restrictions were no fine motor use of the right hand and no grip over 3-5 pounds with the right hand.
8. Plaintiff returned to Dr. Ruch on October 22, 2007 with symptoms of hypersensitivity to the palm and along the long finger ulnar aspect, as well as pain along the thumb. Dr. Ruch referred him to Dr. Scott Levin for consideration of soft tissue coverage.
9. On November 30, 2007, Plaintiff attended an evaluation with Dr. Scott Levin. Dr. Levin advised that he could perform a flap surgery. Dr. Levin also diagnosed Plaintiff with frozen shoulder and prescribed physical therapy.
10. Plaintiff attended an initial evaluation to begin physical therapy for his shoulder; however, Defendants did not authorize treatment for the shoulder or Dr. Levin's surgical recommendation.
11. On February 12, 2008, Plaintiff attended a second opinion appointment with Dr. Kamil Erfanian, who also recommended a flap coverage surgery to address the hypersensitivity of Plaintiff's palm.
12. Dr. Erfanian referred Plaintiff to an orthopaedic shoulder specialist prior to the surgery because rehabilitation for his hand would require the use of his upper extremity.
13. Plaintiff returned to Dr. Ruch on May 14, 2008, who again diagnosed adhesive capsulitis of the right shoulder. Dr. Ruch recommended physical therapy, which Defendants authorized. Dr. Ruch also referred Plaintiff to Dr. Moorman, a shoulder specialist.
14. Plaintiff completed physical therapy for his right shoulder on June 11, 2008. On July 17, 2008, Plaintiff attended an examination with Dr. Moorman. Dr. Moorman released Plaintiff to proceed with the flap surgery. *Page 5 
15. Since the hearing and closing of the record before the Deputy Commissioner, Plaintiff has had the flap surgery performed by Dr. Erfanian and has returned to a modified position within his permanent restrictions.
16. Dr. Ruch's expert medical opinion is that Plaintiff's "shoulder condition is secondary to the injury to his hand and the multiple procedures that it required to treat." Defendants did not proffer an expert medical opinion contradictory to Dr. Ruch's opinion.
18. The competent medical evidence in the instant case establishes that Plaintiff's October 19, 2006 accident is the cause of Plaintiff's shoulder adhesion.
19. As a consequence of Defendants' refusal to authorize Dr. Levin's November 30, 2007 prescription for physical therapy, Plaintiff presented to the Wayne Memorial Hospital emergency room seeking relief from his shoulder pain on December 28, 2007.
20. Defendants' denial of treatment and the compensability of Plaintiff's shoulder adhesion was not unreasonable stubborn, or unfounded litigiousness.
 ***********
Based on the foregoing Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On October 29 2006, Plaintiff sustained an injury by accident arising out of and in the course of his employment. As a result of his accident, he sustained multiple serious injuries to his right hand. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has proven by the greater weight of the medical evidence, particularly Dr. Ruch's expert opinion, that his right shoulder condition is causally related to the compensable injury by accident and its medical aftermath. Pittman v.Thomas Howard,122 N.C. App. 124, 130, 468 S.E.2d 283, 286, disc. reviewdenied, 343 N.C. 513, 472 S.E.2d 18 (1996). *Page 6 
3. Plaintiff is entitled to payment of all of the treatment for his shoulder adhesion recommended by Dr. Ruch and his other medical providers that is reasonably necessary to effect a cure, provide relief or to lessen his period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25 97-25.1.
4. Defendants' defense of this action was not unreasonable, stubborn, or unfounded litigiousness. N.C. Gen. Stat. § 97-88.1.
5. The Industrial Commission finds that this appeal was brought by the insurer and the Commission has ordered the insurer to continue payments of benefits, including compensation for medical expenses, to the injured employee, and the Full Commission orders that the costs of this proceeding, including plaintiff's reasonable attorney's fee to be determined by the Commission, shall be taxed as costs. N.C. Gen. Stat. § 97-88.
 ***********
The foregoing Stipulations, Findings of Fact and Conclusions of Law engender the following:
 AWARD
1. Defendants shall pay all past and future medical expenses incurred by Plaintiff as a result of his October 29, 2006 multiple injuries to his right hand, including but not limited to, treatment recommended by his treating physicians for his right shoulder adhesion.
2. Plaintiff's counsel shall submit an affidavit or itemized statement in support of an award of reasonable attorney's fees pursuant to N.C. Gen. Stat. § 97-88 within 10 days of the filing of this Opinion and Award for the time expended preparing and litigating this appeal. Upon receipt of the affidavit, the Full Commission shall issue an order directing Defendants to *Page 7 
pay an additional attorney's fee directly to Plaintiff's counsel.
3. Defendants shall pay all costs of this action.
This the ___ day of January 2010.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1