***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Chief Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing parties have not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Chief Deputy Commissioner Gheen, with modifications.
 *********** EXHIBITS
1. Stipulated Exhibit 1: Industrial Commission Forms.
2. Stipulated Exhibit 2: Plaintiff's record submissions.
3. Stipulated Exhibit 3: Defendants' record submissions.
4. Stipulated Exhibit 4: Form 22.
 ***********
The parties entered into the following Findings of Fact and Conclusions of Law as:
 STIPULATIONS
1. All parties are subject to the North Carolina Workers' Compensation Act.
2. All parties are properly before the North Carolina Industrial Commission and the Industrial Commission has jurisdiction over the parties and the subject matter.
3. The plaintiff, Teresa Smith, suffered a back injury on January 17, 2003, which Brookwood Farms, Inc., and The Hartford accepted as a compensable workers' compensation claim.
 ***********
Based upon the competent evidence of record and the reasonable inferences flowing therefrom, the Full Commission reaches the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 38 years old, and had worked for several years at Brookwood Farms, Inc., a pork production and processing facility. Over time, plaintiff was promoted and attained the position of supervisor, which is the position she held on January 17, 2003. In that capacity, plaintiff was responsible for supervising several other employees, as well as performing her own meat packaging duties. That job required frequent heavy lifting.
2. On January 17, 2003, plaintiff suffered a compensable injury by accident to her back while lifting some boxes at work. Plaintiff herniated her lumbar spine, and has been unable to work ever since. Brookwood Farms paid ongoing temporary total disability from the date of injury to the date of the hearing. Brookwood Farms has also paid ongoing medical compensation for treatment to plaintiff's back, authorizing treatment with Dr. David Ciliberto.
3. On May 8, 2003 Dr. Ciliberto performed an anterior back fusion surgery. Dr. Ciliberto accessed plaintiff's spine by way of her abdominal area, making an incision in her lower front abdomen. The midline skin and soft tissues were divided and the abdominal muscles on either side were retracted. The bowel was then retracted both superiorly and to the right and left sides to gain access to the lining of the back of the abdominal cavity known as the peritoneum. This lining was then divided to give access to the anterior spine.
4. On Sunday, June 8, 2003, approximately one month after her surgery, plaintiff began experiencing abdominal pain. Fearing it might be related to her surgery, she contacted Dr. Ciliberto that Sunday evening. Dr. Ciliberto advised plaintiff to admit herself into Central Carolina Hospital in Sanford, North Carolina, where Dr. Ciliberto would meet her. Plaintiff saw Dr. Ciliberto that night, and he ordered several tests and a CT scan. Dr. Ciliberto recommended that plaintiff stay in the hospital overnight for treatment, testing, and observation. Dr. Ciliberto did not seek authorization from The Hartford prior to admitting plaintiff because it was a nighttime emergency admission. Since that time, defendants have refused to pay for treatment concerning her abdominal pain, stating that since it was located in her abdomen (which is not the same body part as her back), the Parsons presumption does not apply and plaintiff must prove that this medical treatment was a consequence of her compensable injury.
5. Plaintiff's abdominal pain had begun about 6:00 p.m. on June 8, 2003, in the left lower quadrant of her abdomen. The area of plaintiff's pain complaints was adjacent to the midline lower abdominal incision Dr. Ciliberto made during Plaintiff's May 8, 2003, anterior fusion surgery and was in the area where her bowel had been retracted during surgery. Based on plaintiff's complaints and the result of an x-ray ordered that evening by Dr. Ciliberto that showed air fluid levels in her stomach and a small loop of her bowel, Dr. Ciliberto was concerned that plaintiff had an early intestinal obstruction that could have been related to the development of an adhesion and torsion of the bowel resulting from her recent lumbar repair surgery that had been done through abdominal entry. Dr. Ciliberto testified, and the Full Commission finds as fact, that any patient like plaintiff who has a laparotomy incision, which is an incision into the abdomen where the bowel is retracted, is at risk for developing scar tissue in the abdominal cavity causing an obstruction of the bowel if the bowel rotates around it or is otherwise bound by the development of such an adhesion.
6. Dr. Ciliberto testified, and the Full Commission finds as fact, "there was a high degree of connection between the evaluation in the emergency room and her very recent surgical treatment." The Full Commission finds that the emergency admission and subsequent treatment was a direct result of plaintiff's earlier surgery to correct her workers compensation injury. Dr. Ciliberto did not observe or diagnose any other cause for her abdominal pain or increased air fluid levels.
7. As plaintiff's hospitalization for abdominal pain progressed, the intensity of pain symptoms became less, the abdominal discomfort subsided, the muscular tension in the abdomen abated, and there was resolution of plaintiff's symptoms. Plaintiff was given fluids intravenously during her hospitalization. Since her pain subsided during the course of her hospitalization, it was not necessary to open up her abdominal cavity to ascertain whether the admitting diagnosis of possible bowel problems caused by the lumbar repair surgery was in fact the case.
8. Although the proof that would have been available by opening up the abdominal cavity was not provided, Dr. Ciliberto related his findings upon the emergency admission to the possibility of an early intestinal obstruction. Dr. Ciliberto testified, and the Full Commission finds as fact:
 If so, it resolved itself with the GI rest, gastrointestinal rest it had been provided by initially not permitting the bowel to receive additional material that the stomach would give it if she was eating. And with the rest and I.V. fluids, there was resolution of it, and she got better.
 So we were happy that it did not further evolve into a serious disorder that required perhaps re-operation or naso-gastric tube suction, or the other things that are done for bowel obstructions.
9. The fact that plaintiff was discharged several days later from the hospital, with a diagnosis of "abdominal pain, N.O.S. (not otherwise specified)," does not detract from the fact that plaintiff was admitted to the hospital and treated solely because she was exhibiting conditions that more likely than not were related to her earlier surgery. The greater weight of the evidence shows that since plaintiff's bowel had been retracted during the surgery, her subsequent symptoms necessitated hospitalization. Had it not been for plaintiff's surgery, the hospital admission would not have been necessary.
10. On plaintiff's earlier presentations with Dr. Ciliberto he did not notice any signs of depression. However, on July 1, 2003, during a regularly scheduled visit at his office, he noticed that plaintiff appeared languid. Dr. Ciliberto wrote in his notes on that day that "certainly there does seem to be a depressive element for her condition." He also added a diagnosis of "depression" on his notes. During regularly scheduled visits on August 19 and November 12, 2003, Dr. Ciliberto noticed increasing severity in plaintiff's depression. In fact, he noted on November 12, 2003, that plaintiff appeared "quite depressed." Plaintiff would cry during visits, exhibited restricted facial expression, and reported spending a lot of time in bed.
11. As her depression worsened, Dr. Ciliberto recommended that plaintiff seek professional treatment. Plaintiff was referred to Internal Medicine Associates in Sanford, North Carolina, where she regularly saw Ms. Martha "Marty" Davis, a Physician's Assistant licensed by the State of North Carolina to diagnose and treat, among other things, depression. Ms. Davis began prescribing Paxil, then Effexor for plaintiff's depression. After several months of treatment and minimal improvement, Ms. Davis referred plaintiff to Lee-Harnett Mental Health clinic in Sanford, North Carolina. Plaintiff began treating with Dr. Bert Lucas, chief psychologist, on February 20, 2004.
12. Prior to her workers compensation injury, plaintiff had a history of mental health problems. She was raped in or about 1982, which resulted in mental health counseling and treatment. This treatment eventually ended. In or about 1991, plaintiff sought professional treatment after she divorced her husband. She sought treatment again in 1994 as the result of a family dispute, which included a 30-day inpatient stay at UNC Hospitals. All these treatments lasted for a finite period of time and eventually ended.
13. Plaintiff testified that she had stopped taking Prozac prior to her January 13, 2003, injury. On cross-examination, defense counsel asked plaintiff about a January 17, 2003, doctor's note from Dr. Mark Zeringue at Internal Medicine in Siler City, North Carolina, which states: "She is on Prozac for depression." Plaintiff testified that the doctor's office asked what medications she had recently been taking, and she told them about the Prozac. However, plaintiff testified that she had stopped taking Prozac prior to the date of her back injury, January 13, 2003, and she was not receiving any mental health treatment at that time. The Full Commission finds this testimony to be credible and therefore finds as fact the matters to which she testified.
14. Ms. Davis first saw plaintiff professionally at Internal Medicine Associates on June 5, 2003. During that visit, Ms. Davis noted that plaintiff was tearful and upset. After an examination, Ms. Davis diagnosed plaintiff as suffering from depression and anemia. Ms. Davis prescribed Lexapro for plaintiff's depression. Although plaintiff was taking a couple of anti-anxiety medicines before she saw Ms. Davis, Ms. Davis felt that these medicines were not sufficient given the severity of plaintiff's depression. Ms. Davis next saw plaintiff on June 27, 2003. Ms. Davis testified that plaintiff appeared quite depressed on that date. Plaintiff reported that she felt depressed and was having difficulty doing daily activities. Ms. Davis diagnosed plaintiff's depression as a situational depression related to her compensable back pain and surgery, which the Full Commission finds as fact. Plaintiff also spoke about other related stressors, including her loss of work, financial stress, and inability to obtain prescribed medication. Ms. Davis rendered the opinion, and the Full Commission finds as fact, that plaintiff's depression was due to both her back pain and her inability to function as a result of that pain.
15. Ms. Davis testified that even after hearing plaintiff's prior history of depression, she still felt that plaintiff's back injury could have aggravated an underlying depression. From her dealings with plaintiff, Ms. Davis was unaware of anything else besides plaintiff's back injury and related functional limitations that were aggravating or exacerbating plaintiff's depression. Although on cross-examination counsel obtained Ms. Davis's admission that she did not consider herself to be an expert in the field of mental health conditions or the treatment of mental health conditions, she has been licensed by the state of North Carolina to diagnose and treat depression, under the supervision of a licensed physician. There was no evidence that Ms. Davis's supervising physician disagreed in any way with her diagnosis or treatment of plaintiff for depression. Defense counsel (and plaintiff's counsel on redirect) also seemingly obtained an admission that Ms. Davis's opinion concerning the causation of plaintiff's depression was based upon speculation. However a close reading of her deposition leads to the conclusion that her opinion was based upon her observations and treatment of plaintiff and her many years of similar treatment of depressed persons and not upon mere speculation. Suffice it to say that plaintiff's counsel sufficiently rehabilitated the testimony of Ms. Davis for the Full Commission to have confidence in her opinion that plaintiff's current depression was caused by her compensable injury and its aftermath, and also more likely than not exacerbated whatever earlier underlying depression remaining in plaintiff.
16. Dr. Bert Lucas, chief psychologist at Lee-Harnett Mental Health center in Sanford, North Carolina, first professionally treated plaintiff on February 20, 2004, on a referral from Ms. Martha Davis from Internal Medicine Associates. Dr. Lucas screened plaintiff to determine whether she was suffering from any mental health disorder pursuant to the DSM-IV. This screening included administering a Beck Depression Inventory, which indicated that plaintiff was severely depressed.
17. Dr. Lucas observed that plaintiff was exhibiting many symptoms of major depression, including: sleep problems, loss of appetite, loss of concentration, loss of pleasure, fatigue, and irritability. Specifically, plaintiff endorsed sadness, fatigue, crying, loss of interest, feelings of worthlessness, low self-esteem, irritability, sleep disturbance, decreased energy, anxiety, loss of concentration, nightmares, and nervousness.
18. Dr. Lucas diagnosed plaintiff with a severe, major depressive disorder accompanied by an adjustment disorder with a depressed mood. He believed that this depression and disorder stemmed from plaintiff's inability to work (brought upon by her compensable injury), based on plaintiff's affect and her preoccupation with an inability to function normally. During this appointment, Dr. Lucas also discussed plaintiff's prior mental health history with her, including her 1982 rape and subsequent treatment, and her 1994 hospitalization in Chapel Hill and follow-up care in Chatham County.
19. Dr. Lucas scheduled plaintiff to follow-up with him on March 3, 2004. On that date, Dr. Lucas evaluated plaintiff and maintained his same diagnosis of major depression and adjustment disorder. During this visit, Dr. Lucas again discussed plaintiff's past mental health history with her. Afterwards, Lee-Harnett Mental Health's psychiatrist, Dr. Tom Wilson, prescribed Effexor for plaintiff and provided her with free samples.
20. Dr. Lucas testified, and the Full Commission finds as fact, that plaintiff was suffering from single episode depression because it was his opinion that plaintiff's prior mental health treatment was too remote to constitute a recurring condition.
21. Dr. Lucas saw plaintiff again on March 29, 2004. Dr. Lucas observed that plaintiff was still distressed, in pain, and tearful at times, especially when she talked about issues surrounding her job. Plaintiff also spoke about financial difficulties and her inability to perform housework. On that same visit, Dr. Lucas (through Dr. Wilson) continued Plaintiff on Effexor. This was Dr. Lucas' last treatment of Plaintiff prior to his deposition. Dr. Lucas was asked, based on his clinical observations and evaluation, if he had an opinion on whether plaintiff's back injury and the treatment for it, including surgery, and the functional limitations stemming from her back injury have caused or exacerbated her depression. Dr. Lucas responded: "Oh, by far and away. Yeah, oh, without a doubt. She — if she did not have a back problem, she would not be depressed." The Full Commission finds this testimony to be credible, clear, cogent, and convincing.
22. Defendants have not filed a Form 21, 60, or 63 related to this claim. However, defendants paid temporary total disability benefits after plaintiff's back injury, which they continued to pay through the date of the hearing before the Deputy Commissioner. Defendants began paying medical compensation for treatment of plaintiff's back immediately after her injury and continues to pay for medical treatment to her back through the present day. Defendants have refused to pay for her June 8 through 10, 2003, hospitalization or any of plaintiff's treatment for depression.
23. Defendants paid weekly disability benefits for more than ninety days without contesting liability of plaintiff's back injury. Defendants have admitted liability for plaintiff's workers' compensation injury.
24. Defendants contend that plaintiff's mental health condition existed prior to the compensable injury and that plaintiff failed to prove that the condition was aggravated by the injury. The Full Commission finds as fact that although plaintiff has a history of mental health treatment, previous incidents of treatment were finite in duration and that her admittedly compensable injury aggravated the underlying condition and made it disabling.
25. No medical records or deposition testimony was provided to counter the opinions of plaintiff's authorized treating healthcare providers: Dr. Ciliberto, Dr. Lucas, and Davis, P.A.
26. Based upon the greater weight of the evidence, plaintiff's psychological problems were caused or substantially aggravated by her admittedly compensable injury.
27. Plaintiff's legal counsel has provided valuable legal services, including but not limited to the preparation and trial of this workers' compensation action. As the hearing in this matter involves issues of appropriate medical treatment and not issues of entitlement to weekly disability benefits, counsel for plaintiff was asked by Chief Deputy Commissioner Gheen to submit an affidavit of the services rendered, the times expended in those services, and a suggested hourly rate of compensation. Counsel submitted such an affidavit, and the Full Commission finds that counsel spent 62 hours in providing such services. The Full Commission finds a reasonable attorney fee for these services to be $5,000, considering the time invested, the amount involved, the results achieved, whether the fee was fixed or contingent, the customary fee for similar services, the experience and skill level of the attorney, and the nature of the attorney's services.
28. The appeal to the Full Commission was brought by the carrier and the Full Commission by this Opinion and Award orders the insurer to make, or to continue, payments of benefits, including compensation for medical expenses, to plaintiff. Counsel for plaintiff, at the request of the Full Commission, filed an affidavit showing that he had spent at least 10 hours litigating defendants' appeal to the Full Commission. The Full Commission finds a reasonable attorney fee for these services to be $2,000, considering the time invested, the amount involved, the results achieved, whether the fee was fixed or contingent, the customary fee for similar services, the experience and skill level of the attorney, and the nature of the attorney's services. The Commission or court may further order that the cost to the injured employee of such hearing or proceedings including therein reasonable attorney's fee to be determined by the Commission shall be paid by the insurer as a part of the bill of costs.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. In determining whether a condition or claim has been established as work related, payment of medical and disability benefits without contesting liability within the ninety day time period under N.C. Gen. Stat. § 97-18.1 constitutes acceptance of the claim and amounts to anaward of the Industrial Commission pursuant to N.C. Gen. Stat. § 97-82.Shockley v. Cairn Studios, Ltd., 149 N.C. App. 961, 563 S.E.2d 207
(2002). Defendants' payments of weekly disability compensation beyond the statutory period provided by N.C. Gen. Stat. § 97-18(d), without having filed appropriate forms, constitutes an admission of the compensability of plaintiff's claim and an award of the Industrial Commission. N.C. Gen. Stat. §§ 97-18 and 97-82. Additionally, the defendants admitted their liability on appeal to the Full Commission.
2. Once an injury is determined to be compensable and conditions are established as work related, a rebuttable presumption arises that further medical treatment is directly related to the workers' compensation claimant's original compensable injury and the burden shifts to defendants to prove that ongoing medical conditions are not so related. N.C. Gen. Stat. § 97-25; Reinninger v. Prestige Fabricators, Inc.,136 N.C. App. 255, 523 S.E.2d 720 (1999); Parsons v. Pantry, Inc.,126 N.C. App. 540, 542, 485 S.E.2d 867, 869 (1997). The presumption is rebuttable; however, defendants offered no evidence rebutting the presumption. See Pittman v. Thomas Howard, 122 N.C. App. 124,468 S.E.2d 283, disc. review denied, 343 N.C. 513, 472 S.E.2d 18 (1996).
3. Defendants contend that plaintiff is not entitled to the Reinninger
presumption that her mental health treatment is related to her original work-related injury, as defendants only accepted plaintiff's low back as compensable. Defendant's contention as to the limited application of theReinninger presumption to this treatment is well taken. Plaintiff's mental condition did not appear until some time had passed after her initial treatment for her compensable back injury. N.C. Gen. Stat. § 97-25;Reinninger v. Prestige Fabricators, Inc., 136 N.C. App. at 255,523 S.E.2d at 720; Parsons v. Pantry, Inc., 126 N.C. App. at 540,485 S.E.2d at 867.
4. Assuming that the Reinninger presumption does not apply to plaintiff's health condition, plaintiff has nevertheless proven by the greater weight of the evidence that her underlying mental health condition was aggravated by her compensable injury. Although the Full Commission finds that the Reinninger presumption does apply to plaintiff's emergency hospital admission and treatment, and defendants presented no evidence sufficient to carry their burden of proof, nevertheless, plaintiff's proof carried the day had there not been aReinninger presumption. While the physician who admitted plaintiff for hospital treatment could not be certain plaintiff had an intestinal obstruction, the physician's expert testimony establishes that he believed an obstruction was probable at the time of admission and treatment. It was the reasonable probability that plaintiff was developing an intestinal blockage, not the fact that the blockage existed, that justified the admission and subsequent treatment. N.C. Gen. Stat. § 97-25.
5. Again assuming that the Reinninger presumption does not apply, the expert testimony establishes by the greater weight of the evidence that plaintiff's compensable injury and subsequent pain caused or, at the very least, aggravated her depressive and situational emotional disorders. N.C. Gen. Stat. § 97-25.
6. Defendants could only require preauthorization for plaintiff's hospital admission if the admission was not for emergency medical services. Plaintiff's suspected intestinal obstruction is a condition necessitating emergency medical services within the meaning of the Act. N.C. Gen. Stat. §§ 97-25.3 and 97-25(b)(1).
7. As a result of the compensable injury, plaintiff is entitled to medical compensation as reasonably necessary to effect a cure, give relief, or lessen the period of disability. N.C. Gen. Stat. § 97-25. Defendants shall pay for needed relief so long as such medical treatments may reasonably be required, including plaintiff's hospitalization of June 8, 2003. N.C. Gen. Stat. § 97-59.
8. Plaintiff's counsel of record is entitled to a reasonable attorney's fee for his work prior to and during the hearing before the Chief Deputy Commissioner. N.C. Gen. Stat. § 97-90. Plaintiff's counsel of record is also entitled to a reasonable attorney's fee, to be paid by defendants as a part of the bill of cost, for the defense of defendants' appeal. N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendants shall pay for all medical treatment incurred by plaintiff as a result her compensable injury that effects a cure, provides relief, or lessens the period of disability, including plaintiff's June 8, 2003, hospitalization and treatment of her psychological condition.
2. Defendants shall pay directly to plaintiff's counsel every fourth check of disability compensation otherwise due plaintiff until the sum of $5,000.00 has been reached, as a reasonable attorney's fees for representing plaintiff prior to and during the hearing before the Chief Deputy Commissioner, pursuant to N.C. Gen. Stat. § 97-90.
3. Defendants shall pay directly to plaintiff's counsel the sum of $2,000.00, as a reasonable attorney's fees for representing plaintiff with respect to defendants' appeal to the Full Commission, pursuant to N.C. Gen. Stat. § 97-88.
4. Defendants shall pay the costs of this action.
This 1st day of March 2005.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER