* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and arguments of the parties. The appealing party has shown good ground to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter of this case. All *Page 2 
the parties are bound by and subject to the North Carolina Workers' Compensation Act. All parties have been correctly designated and there is no question as to the misjoinder or nonjoinder of any party.
2. An employer-employee relationship existed between defendant-employer and plaintiff at all times relevant herein.
3. Defendant-employer was an approved self-insured with Key Risk Management Services acting as its servicing agent at all relevant times herein.
4. Plaintiff's average weekly wages were $673.08 per week, yielding a compensation rate of $448.72 per week.
5. The following exhibits were admitted into evidence during the hearing:
 a) Stipulation #1 — plaintiff's medical records;
 b) Defendant's #1 — letter from defense counsel to plaintiff's prior counsel dated February 12, 2003 with Form 28B attached;
 c) Defendant's #2 — plaintiff's Motion for Reconsideration, dated November 5, 2002;
 d) Plaintiff's #1 — the Curriculum Vitae of Dr. Marvin Rozear; and
 e) Plaintiff's #2 — plaintiff's employment records.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT *Page 3 
1. Plaintiff sustained an injury by accident on April 17, 1998 when he was involved in a motor vehicle accident in the course and scope of his employment. Defendant admitted the claim on a Form 63 and plaintiff was paid temporary total disability for the time he missed work.
2. Plaintiff initially treated with Hart Industrial Clinic with complaints of head, back, and shoulder pain. After conservative treatment measures failed, plaintiff was referred to Dr. Jeffrey Knapp at Hickory Orthopaedic Center. Dr. Knapp reviewed an MRI of plaintiff's cervical and thoracic spine and noted a central disc herniation at C5-6. Dr. Knapp prescribed epidural steroid injections.
3. On January 5, 1999, following no relief from the epidural steroid injections, Dr. Knapp opined that plaintiff's herniation at C5-6 was not significantly contributing to plaintiff's pain and did not recommend surgical intervention. Rather, Dr. Knapp recommended that plaintiff participate in a structured pain management program.
4. Plaintiff entered the Chronic Pain Rehabilitation Program at Presbyterian Rehabilitation Center for Pain Management on March 31, 1999 under the care of Dr. Gerald Aronoff. Dr. Michael Nesbit conducted a neurological evaluation and found no objective basis for plaintiff's pain. Dr. Nesbit placed plaintiff at maximum medical improvement, assigned a 0% permanent partial impairment rating, and released plaintiff to return to work without restrictions. Plaintiff was discharged from the pain management program on April 27, 1999.
5. Plaintiff treated with Dr. Robert Yapundich of Neurology Associates in 1998 and 1999. On May 3, 1999, Dr. Yapundich released plaintiff from his care as he had nothing further to offer plaintiff. Dr. Yapundich noted that despite being seen by numerous physicians and participating in a comprehensive pain management program, plaintiff's complaints had remained unchanged. *Page 4 
6. Plaintiff was referred to Dr. Gary Indenbaum for a neuropsychological evaluation that took place on August 14, 2000. Dr. Indenbaum diagnosed plaintiff with pain disorder with psychological factors in a general medical condition.
7. On January 26, 2001, plaintiff was evaluated by Dr. Scott McCloskey. Dr. McCloskey noted that plaintiff's exam was "somewhat bizarre and that some of his symptoms do not make any sense anatomically." Dr. McCloskey further noted that he would be willing to give plaintiff the benefit of the doubt and perform a discectomy at the C5-6 level.
8. On May 2, 2001, defendant filed its first Form 24 Application to Terminate or Suspend Benefits. By Administrative Order filed August 13, 2001, Special Deputy Commissioner Elizabeth "Lacy" Maddox referred the matter for a hearing and the case was assigned to former Deputy Commissioner Edward Garner (hereinafter "Deputy Commissioner Garner).
9. Plaintiff filed Motion to Change the Treating Physician on about August 24, 2001. On September 17, 2001, Deputy Commissioner Garner entered an Order denying defendant's Form 24 and plaintiff's Motion. Deputy Commissioner Garner further ordered plaintiff to return to Dr. Knapp for an evaluation of his current medical condition.
10. Dr. Knapp evaluated plaintiff on October 3, 2001. Dr. Knapp concurred with the 0% permanent partial impairment rating and full-duty release to work as found by the physicians at Presbyterian Rehabilitation Center for Pain Management.
11. On October 16, 2001, defendant filed a second Form 24 Application and on November 2, 2001 plaintiff filed another Motion to Change the Treating Physician.
12. An evidentiary hearing was scheduled on those issues before Deputy Commissioner Garner on December 21, 2001 in Winston-Salem, North Carolina. On January *Page 5 
14, 2002, Deputy Commissioner Garner directed plaintiff to participate in an independent medical evaluation at Duke University Medical Center and that this evaluation take place prior to any evidentiary hearing, should one become necessary.
13. Due to difficulties in scheduling an evaluation at Duke University Medical Center, plaintiff was evaluated by Dr. Mitchel Harris at Wake Forest University Baptist Hospital on July 29, 2002. Dr. Harris found that, upon examination, plaintiff's pain did not appear to be consistent with the objective pathology. Dr. Harris opined that plaintiff would not be a good surgical candidate.
14. Subsequent to plaintiff's evaluations with Drs. Knapp and Harris, on October 10, 2002, Deputy Commissioner Garner filed an Order approving defendant's Form 24 Application terminating plaintiff's benefits.
15. On February 12, 2003, defendant filed a Form 28B reflecting that total disability compensation payments had been made to plaintiff for the periods from April 23, 1998 through June 28, 1998; January 11, 1999 through March 28, 1999; and April 5, 1999 through October 9, 2002.
16. Plaintiff filed a Motion to Reconsider on November 5, 2002, which had not been ruled upon when Deputy Commissioner Garner left the Industrial Commission, was ultimately withdrawn by plaintiff on October 31, 2005. Contemporaneous to the withdrawal of the Motion, plaintiff filed a Form 33 requesting a hearing to appeal the October 10, 2002 Order entered by Deputy Commissioner Garner. The Form 33 Request for Hearing was filed three years after plaintiff's benefits were terminated.
17. Plaintiff was re-evaluated by Dr. Indenbaum on August 16, 2006. Dr. Indenbaum found plaintiff to be profoundly depressed and did not believe plaintiff would be able to work. *Page 6 
At his deposition, Dr. Indenbaum opined to a reasonable degree of medical certainty that the April 17, 1998 motor vehicle accident was a contributing factor to plaintiff's psychological condition. However, Dr. Indenbaum could not opine as to whether plaintiff's psychological condition would have prevented plaintiff from working between 2000 and 2006 as he did not treat plaintiff during that time frame. Furthermore, Dr. Indenbaum could not state with any certainty that plaintiff's current psychological condition and disability was related to the April 17, 1998 motor vehicle accident.
18. Dr. Alfred Geissele, who evaluated plaintiff in February 1999, had concluded that there was no surgically remediable lesion as plaintiff's clinical history and physical examination findings did not correlate with the MRI findings. Dr. Geissele re-evaluated plaintiff on May 2, 2006 and again found that surgery was not an option and recommended continued pain management.
19. At the hearing before the Deputy Commissioner, Dr. Marvin Rozear provided his opinion regarding plaintiff's medical condition. Dr. Rozear, a board-certified neurologist, conducted a review of plaintiff's medical records, but did not review any of the MRIs of plaintiff's spine. Furthermore, Dr. Rozear did not perform a physical examination of plaintiff and only met plaintiff at the evidentiary hearing. Despite the fact that he did not review the MRIs and did not physically examine plaintiff, Dr. Rozear opined to a reasonable degree of medical certainty that the injury plaintiff sustained on April 17, 1998 caused the central disc herniation at C5-6 and the continued pain that plaintiff currently suffers. Dr. Rozear further opined that the surgery haltingly recommended by Dr. McCloskey was reasonably necessary.
21. Based upon the greater weight of the competent evidence, the Full Commission gives greater weight to the opinions of Drs. Knapp, Nesbit, Yapundich, Harris, and Geissele over *Page 7 
Drs. McCloskey and Rozear regarding plaintiff's need for further medical treatment to his compensable back injury. As such, plaintiff has not shown that surgery for his compensable back injury is reasonably necessary to effect a cure, give relief, or lessen the period of disability.
22. Based upon the greater weight of the evidence, plaintiff has not shown that his current psychological condition is causally related to the compensable injury by accident.
23. Based upon the greater weight of the competent, credible evidence, defendant has shown that plaintiff is no longer disabled due to his April 17, 1998 injury by accident as of October 10, 2002.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident on April 17, 1998 when he was involved in a motor vehicle accident in the course and scope of his employment. N.C. Gen. Stat. § 97-2(6). Plaintiff was found to be no longer disabled as of October 10, 2002 when Deputy Commission Garner approved a Form 24 Application filed by defendant.
2. Under Rule 703(1) of the Workers' Compensation Rules of the North Carolina Industrial Commission, an administrative order may be reviewed upon the filing of a motion for reconsideration with the Administrative Officer who entered the ruling or it may be appealed by requesting a hearing within 15 days from receipt of the ruling. Plaintiff's Motion to Reconsider the October 10, 2002 Order by Deputy Commissioner Garner was not filed until November 5, 2002. However, there is no evidence establishing when plaintiff received the Order and, therefore, defendant has not shown that plaintiff's Motion was untimely. Rule 703(1). *Page 8 
Furthermore, under Rule 703(1) the period to file an appeal from an administrative order does not begin running until receipt of the Order or receipt of a ruling on a Motion to Reconsider. Plaintiff's properly filed Motion to Reconsider tolled the further running of the statute of limitations. Therefore, plaintiff's filing of the Form 33 Request for Hearing was timely. Rule 703(1).
3. Defendant has the burden of proof when filing a Form 24 Application to Terminate or Suspend Benefits. Once defendant shows through competent, credible evidence that plaintiff is no longer disabled, the burden then shifts to plaintiff to show through competent, credible evidence that he remains disabled. In order to meet the burden of proving disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex Cabinet Co., 305 N.C. 593,290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than her pre-injury wages. Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
4. In the case at hand, defendants presented competent, credible evidence that plaintiff was no longer disabled and Deputy Commissioner Garner approved the Form 24 *Page 9 
Application. Plaintiff has failed to show that after October 10, 2002, he continued to remain incapable of earning pre-injury wages in either the same or in any other employment and that his incapacity to earn pre-injury wages was caused by his April 17, 1998 injury. N.C. Gen. Stat. § 97-29; Russell v. Lowes Product Distribution, supra.
5. In a claim for additional compensation for medical treatment, the treatment must be "directly related to the original compensable injury."Pittman v. Thomas Howard, 122 N.C. App. 124, 130, 468 S.E.2d 283, 286,disc. review denied, 343 N.C. 513, 471 S.E.2d 18 (1996). It is the burden of the injured worker to prove that the injury or condition being treated is causally related to the compensable injury by accident.Snead v. Mills, Inc., 8 N.C. App. 447, 174 S.E.2d 699 (1970). The North Carolina Court of Appeals stated in Parsons v. Pantry, Inc.,126 N.C. App. 540, 485 S.E.2d 867 (1997) that once the Commission has found a claim compensable, a rebuttable presumption arises that the treatment is directly related to the original compensable injury. The burden then shifts to defendant to prove that the medical treatment is not directly related to the compensable injury. Id. See also Perez v.American Airlines, 174 N.C. App. 128, 620 S.E.2d 288
(2005), disc. review improvidently allowed360 N.C. 587, 634 S.E.2d 887 (2006).
6. In the case at bar, the Parsons presumption creates a rebuttable presumption that plaintiff's current back condition is causally related to the compensable injury by accident. Parsons v. Pantry, Inc.,supra. However, defendants have shown through the competent, credible evidence that any medical treatment plaintiff is seeking is not directly related to the compensable injury.
7. Furthermore, plaintiff has failed to show that he is entitled to any further medical treatment for any alleged psychological condition. N.C. Gen. Stat. §§ 97-2(19), 97-25, 97-25.1. *Page 10 
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for further benefits is hereby DENIED.
2. Each party shall pay their respective costs.
 ORDER
Plaintiff filed a Motion for a 10% Penalty under N.C. Gen. Stat. § 97-18 for defendant's failure to comply with the April 20, 2007 Opinion and Award of Deputy Commissioner Glenn. Defendant filed a Response. IT IS HEREBY ORDERED that plaintiff's Motion is DENIED.
This the 13th day of December 2007.
S/______________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING WITHOUT A WRITTEN OPINION:
 S/______________________ DANNY LEE McDONALD COMMISSIONER